No. 19,375.

Lois Brewer *v.* D. Meredith Williams.
(362 P. [2d] 1033)

Decided July 3, 1961.

Messrs. Rector & Kane, for plaintiff in error.

Mr. William D. Goodbar, Mr. C. Lee Goodbar, Jr., for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

We shall refer to the parties by name or as they appeared in the trial court, where plaintiff in error, Lois

Brewer, was defendant and defendant in error, D. Meredith Williams, was plaintiff.

Upon trial to the court D. Meredith Williams, as assignee of Prigmore-Williams Realty Company, a corporation, recovered judgment for $4,100, interest and costs from Lois Brewer as a real estate commission for services rendered Brewer by Prigmore-Williams culminating in the sale of defendant's restaurant and tavern, known as Sabena Lounge, to Rudy Enrico and Fred Giusti for $58,000, which sale figure included the business, fixtures and inventory, but not the real property. However, with respect to the real property, Enrico and Giusti as a part of the same transaction took a five year lease on the business property at $400 per month, with an option to renew the lease on the same terms for an additional five years.

Brewer by writ of error seeks reversal of the judgment, generally contending that the evidence is insufficient to support the essential findings of the trial court and in particular assigns error to the following findings: (1) that there was an agreement or contract of employment between defendant and Prigmore-Williams; (2) that Prigmore-Williams produced a prospect who was ready, willing and able to complete the purchase on the terms proposed by the owner, Lois Brewer.

Upon conclusion of the evidence the trial court took the matter under advisement and shortly thereafter entered detailed written findings of fact. These findings furnish needed background information concerning the present controversy and at the same time point up the various problems to be resolved. We therefore set them forth in considerable detail, since the main contention of defendant is that these findings are not supported by the evidence. In essence the findings and conclusions of the trial court are as follows: (1) that D. Meredith Williams has a valid assignment of any and all claims of Prigmore-Williams Realty Company, a corporation, against Lois Brewer arising out of the sale of the Sabena

Lounge; (2) that in August 1956 defendant decided to sell the Sabena Lounge and that because of her close, personal friendship with Lora Carpenter, a licensed real estate saleswoman then employed by Cook & Rhodes Realty Co., she signed a written "exclusive" listing with Cook & Rhodes; (3) that one Esther Thornton was at that time also a licensed real estate saleswoman employed by Cook & Rhodes; (4) that thereafter Carpenter and Thornton endeavored without success to locate a purchaser for the Sabena Lounge; (5) that on about November 1, 1956, Carpenter and Thornton terminated their employment with Cook & Rhodes and entered into the employ of Prigmore-Williams and caused their licenses to be transferred to Prigmore-Williams; (6) that "after this transfer * * * both * * * continued to attempt to effect a sale of the Defendant's property * * * and Defendant was aware of those efforts and encouraged it;" (7) that "the Defendant made repeated inquiries of these real estate sales agents of the progress made to effect a sale. Also they knew from the Defendant and the Defendant advised them that she would sell her business for $60,000 and a lease agreement of $400 a month on the real property. She suggested and urged that they get offers for her consideration and the Defendant was not explicit about all the terms, it being commonly understood that the Defendant was anxious to sell her business and the terms and details could be worked out and agreed upon if a satisfactory purchaser could be produced. The Defendant knew and understood that these salesmen were acting as her agents and in a business capacity to effect the desired sale;" (8) that defendant as of November 1956 knew that Carpenter and Thornton had terminated their employment with Cook & Rhodes and were then working for Prigmore-Williams and through the joint efforts of both plaintiff and defendant Cook & Rhodes "released" its exclusive listing; (9) that towards the end of November 1956 Esther Thornton located a prospective buyer, one Rudy Enrico, and that she

thereafter introduced Enrico to Brewer, who were prior to this introduction total strangers; (10) that Enrico, and his associate, one Fred Giusti, with the help of Thornton and Carpenter prepared a written offer to purchase the Sabena Lounge, but the evidence was "unclear" as to whether this offer was ever actually submitted to Brewer; (11) that the evidence, however, "is convincing and clear * * * that the Defendant suddenly became vitally interested in not paying a real estate commission"; (12) that "within just a few days [thereafter] she began and concluded negotiations on her own to sell her property to the identical purchasers [Enrico and Giusti] without the benefit of agents and on December 7, 1956, she signed a contract of sale with these purchasers for $58,000 for the business and a five year lease at $400 per month for the real estate. * * * " (13) that " * * * the evidence is clear and convincing that there was an agreement between Plaintiff and Defendant for the Plaintiff to act as Defendant's broker to sell her business. * * *. Both Mrs. Thornton and Mrs. Carpenter were agents of Plaintiff from the first part of November, 1956, during the entire time of this transaction. The Defendant understood that they were selling her property for her and the terms were certainly generally understood. The sale, ultimately consummated to the buyer located and produced by the Plaintiff's agent, and introduced to the Defendant was substantially the same transaction * * * "; (14) that "the evidence is also clear and convincing that the Plaintiff company was the efficient and procuring cause of the sale * * *. The efforts of the Plaintiff's agents located the purchasers * * * who subsequently purchased on the same terms all understood would be acceptable to the seller * * * to permit the seller to escape payment of the commission in such circumstances would be unconscionable and completely inequitable."; and (15) that the fair and reasonable value of the services rendered Defendant by Prigmore-Williams was $4,100.

■ Careful examination of the record convinces us that there is ample evidence to support each of the material findings made by the trial court. True, defendant introduced evidence to the contrary, but the trial court, not this court, is the trier of the facts. See *Andersen-Randolph Co. Inc. v. Taylor,* 146 Colo. 170, 361 P. (2d) 142, decided April 10, 1961, wherein numerous cases are cited in support of the axiomatic proposition that findings of a trial court sitting without a jury are binding on review by writ of error unless the evidence is wholly insufficient to sustain them. In the instant case the evidence, instead of being wholly insufficient, on the contrary is ample to sustain all the material findings of the trial court. See also *Cowgill v. Neet,* 127 Colo. 184, 255 P. (2d) 399, and *Grondenberg v. Bayliss,* 77 Colo. 163, 234 Pac. 1064.

■ More specifically there is evidence to support the finding of the trial court that there was a contract of employment, resulting in a principal-agent relationship, between Brewer and Prigmore-Williams, the latter being a corporation and acting through its employees, Carpenter and Thornton. Such a contract of employment may be oral or may be implied from the particular circumstances of the case. *Klipfel v. Bowes,* 108 Colo. 583, 120 P. (2d) 959. The situation here is not one where the broker merely obtained from the owner the price at which he would sell or lease, with nothing more being shown in support of the broker's alleged agency. Hence, the state of plaintiff's evidence of the saleswomen's continuous efforts with the knowledge and encouragement of defendant distinguishes the present case from *Castner v. Richardson,* 18 Colo. 496, 33 Pac. 163, and *Clammer v. Eddy,* 41 Colo. 235, 92 Pac. 722.

Having determined that the evidence was sufficient to support the finding that a contract of employment existed between defendant and Prigmore-Williams, the further conclusion of the trial court that under the circumstances Brewer was obligated to pay a real estate

commission was proper. C.R.S. '53, 117-2-1, provides that "No real estate agent or broker shall be entitled to a commission for finding a purchaser who is ready, willing and able to complete the purchase of real estate as proposed by the owner, until the same is consummated or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon." Brewer contends that under this statute Prigmore-Williams is not entitled to a commission because Enrico and Giusti, though admittedly produced by Thornton and Carpenter, were unwilling "to complete the purchase of real estate *as proposed by the owner.*" (Emphasis supplied.) The evidence discloses that although Brewer originally advised Carpenter that she would like $100,000 (preferably cash, of course) for the business and the real estate upon which it was located, nonetheless by her words and conduct she definitely reserved the right to consider *all* offers made by any prospect produced by Carpenter.

There is ample evidence to support the finding that Brewer subsequently stated she would consider an offer of approximately $60,000 for the business only, with a lease on the realty of about $400 per month. It was at this stage of the proceedings that Carpenter and Thornton first produced Enrico and introduced him to Brewer. Discussions among Brewer, Enrico, Carpenter and Thornton regarding the purchase of the Sabena Lounge ensued, but were abruptly terminated when Brewer suddenly developed an acute antipathy to paying a real estate commission. Within a few days after these negotiations were apparently terminated, Brewer and Enrico, in the absence of any representative from Prigmore-Williams, signed a contract for the sale and purchase of the Sabena Lounge for $58,000, the contract calling for a substantial cash payment by the date of closing, the balance covered by an installment note, and with a lease of the premises for five years at $400 per month with the option of renewal for an additional five years on the same terms. With only a slight variation, these are the

very terms which Brewer herself had indicated she would consider. In support of the proposition that a broker who procures a purchaser, ready, willing and able to purchase upon the terms and conditions imposed by the owner is entitled to his commission, even though the owner and the purchaser thereafter conduct further negotiations resulting in a change of the terms, see *McCullough v. Thompson,* 133 Colo. 352, 295 P. (2d) 221, and *Liggett v. Allen,* 77 Colo. 116, 234 Pac. 1072.

In *Houston v. H. G. Wolff & Son Investment Company,* 94 Colo. 73, 28 P. (2d) 255, when confronted with a factual situation quite similar to that in the instant case this Court made the following apropos comment: "All other questions presented by this record are of disputed facts on conflicting testimony. The verdict settled them. Assuming, as we must, that it settled them correctly, this was but another case of an owner circumventing his broker by appropriating his client and seeking to escape a commission by slight changes in the terms of the trade. In other words, without paying for the seed he sought to reap the field that the broker had sowed. The scheme is very old, but so is the law which frustrates it."

The judgment is affirmed.

Mr. Justice Moore and Mr. Justice Doyle concur.