**TELLURIDE REAL ESTATE COMPANY and Steven Hilbert, Plaintiffs–Appellees and Cross–Appellants,**

v.

**PENTHOUSE AFFILIATES, LLC; Jeffrey Brooks; Prospect Real Estate, LLC; Richard Furlaud; and Walter Gates, a/k/a Bud Gates, Defendants–Appellants and Cross–Appellees.**

No. 97CA1866.

Colorado Court of Appeals, Div. III.

Jan. 21, 1999.

Rehearing Denied Aug. 12, 1999.

Certiorari Denied April 10, 2000.

152

Reinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Otto K. Hilbert, David A. Greher, Denver, for Plaintiffs–Appellees and Cross–Appellants.

John H. Steel, Telluride, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge ROTHENBERG.

Defendants, Penthouse Affiliates, L.L.C.; Jeffrey Brooks, Prospect Real Estate, L.L.C.; Richard Furlaud; and Walter Gates a/k/a Bud Gates, appeal the trial court's judgment in favor of plaintiffs, Telluride Real Estate Company (TREC) and Steve Hilbert (collectively realty agents), on their claim for a commission from the sale of a condominium unit. The realty agents cross-appeal the trial court's denial of their claims for tortious interference with contract, conspiracy, and for exemplary damages, and also claim entitlement to sanctions. We affirm.

I.

The trial court found the following facts. Defendants Brooks and Prospect Real Estate had listed the Revenue Penthouse in Telluride, Colorado, on the Multiple Listing Service (MLS). In September 1995, plaintiff Hilbert was introduced to defendant Furlaud, a potential purchaser of condominium property in Telluride. After some discussion, Hilbert showed Furlaud and his wife several properties at the Peaks at Telluride Mountain Village.

The parties made an appointment for the next day at which time Hilbert showed the Furlauds several "shell units," in which construction was incomplete, and also showed them the Revenue Penthouse, which was a completed unit. The Furlauds were interested in the completed unit and made an appointment to view it again with Hilbert later in the day.

The Furlauds rescheduled and saw the unit again on the following day. At that time, they made specific inquiries into different aspects of the property, including taxes, homeowners' fees, and the amount of an offer that might be sufficient to purchase the property.

The Furlauds left that day for their home in New York. Hilbert explained that he would be gone on a trip for two days, but that he would be available by cellular phone and fax machine. He also gave the Furlauds the name and phone number of representatives in his office. Hilbert called defendant Brooks that evening and informed him that he had a definite prospect for the Revenue Penthouse unit.

On his flight to New York, Furlaud decided not to make an offer on the unit. However, upon his return home, he spoke to a friend who also owned property in Telluride. After Furlaud expressed dissatisfaction with the information he had received from Hilbert, the friend spoke to defendant Brooks and asked Brooks to call Furlaud.

After some conversation and negotiation, Furlaud and Brooks agreed to a "verbal handshake" deal for the purchase of the property. Brooks then sent Furlaud a transaction broker agreement, and they proceeded to work together throughout the acquisition and final closing on the property.

Neither Brooks nor Furlaud returned Hilbert's phone calls. Hilbert then delivered a letter to Brooks to confirm his right to a commission on the sale. He was informed by Brooks that Furlaud was dissatisfied with Hilbert's services and no longer wished for him to be involved in the transaction.

The realty agents then brought this action to recover the commission they contended was owed on the sale of the Revenue Pent-house unit. Following a bench trial, the court awarded the realty agents $70,000 in commissions, but denied their request for damages for tortious interference with contract and civil conspiracy. This appeal and cross-appeal followed.

## II.

█ Defendants first contend the trial court erred in determining that § 12–61–801, et seq., C.R.S.1998, did not fully replace the common law concept of "procuring cause" and, therefore, erred in allowing the realty agents to recover the commission. We disagree.

The doctrine of procuring cause has long been a part of the common law in Colorado. *See Minks v. Clark*, 70 Colo. 323, 201 P. 45 (1921). *See also Brewer v. Williams*, 147 Colo. 146, 362 P.2d 1033 (1961) (broker who procures person ready, willing, and able to purchase upon terms and conditions imposed by owner is entitled to commission, even though owner and purchaser later conduct further negotiations which result in change of terms).

█ Under this doctrine, the determination whether a broker is the procuring cause rests on whether the broker set in motion a chain of events which, without break in continuity, resulted in a sale. When the buyer and seller involved in a real estate contract intentionally exclude a broker from negotiations, they are precluded as a matter of law from defending on the basis that the broker was not the procuring cause. *Winston Financial Group, Inc. v. Fults Management, Inc.*, 872 P.2d 1356 (Colo.App.1994).

█ The factfinder's determination of procuring cause will not be overturned on appeal unless clearly erroneous. *See Grondenberg v. Baylies*, 77 Colo. 163, 234 P. 1064 (1925). Application of the procuring cause doctrine does not depend on the existence of a written agreement.

In 1993, the General Assembly enacted, effective January 1, 1994, "An Act Concerning Brokerage Relationships in Real Estate Transactions." *See* Colo. Sess. Laws 1993,

ch. 218 at 979 (now codified as § 12–61–801, et seq., C.R.S.1998 (the 1994 Act)).

Defendants assert that the 1994 Act was intended to supplant completely existing law pertaining to brokerage relationships. However, the trial court concluded that there was nothing in the statutory scheme addressing the issue of procuring cause and, therefore, that it was not an issue considered or addressed by the statutory amendments. We agree with the trial court that the plain language of the statutory scheme does not support defendants' assertion.

■ Statutes in derogation of the common law must be strictly construed. If the General Assembly wishes to abrogate common law rights, it must manifest its intent expressly or by clear implication. *See Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070 (Colo.1992).

■ When a statute does not abrogate common law either explicitly or as a result of inconsistent language or applicability, it must be construed so as to reach a reasonable result which harmonizes the effects of the common law and the legislative authority. *Niemet v. General Electric Co.,* 843 P.2d 87 (Colo.App.1992), *aff'd,* 866 P.2d 1361 (Colo. 1994).

The legislative declaration contained in the 1994 Act states:

(1) The general assembly finds, determines, and declares that the public will best be served through a better understanding of the public's legal and working relationships with real estate brokers and by being able to engage any such real estate broker on terms and under conditions that the public and the real estate broker find acceptable. This includes engaging a broker as a single agent, subagent, dual agent, or transaction-broker. Further, the public should be advised of the general duties, obligations, and responsibilities of a real estate broker in any particular real estate transaction.

(2) This part 8 is enacted to govern the relationships between real estate brokers and sellers, landlords, buyers, and tenants in real estate transactions.

Section 12–61–801, C.R.S.1998.

■ Thus, the expressed purpose of the legislation is to protect consumers in their interactions with real estate professionals. The 1994 Act does not address comprehensively the area of commissions and/or compensation earned by brokers. In addition, the parties have agreed that there was no mention of the procuring cause doctrine in the legislative history surrounding the 1994 Act. Accordingly, we conclude, as did the trial court, that the Act did not eradicate the common law concept of procuring cause.

Applying the principle of procuring cause to the facts here, the trial court found that:

Hilbert showed the unit, provided information, diligently attempted to provide assistance but was 'frozen out' by Defendants who all expected that this would save $70,-000 to all concerned in the transaction ... 'But for' Hilbert's three showings (two of the Revenue unit) this transaction would not have occurred.

■ There is record support for the trial court's determination that Hilbert was the procuring cause of the transaction and defendants do not dispute that fact. Rather, their assertion, which we have rejected, is that the realty agents cannot prevail as a matter of law because the Act eradicated the common law concept of procuring cause.

In view of our conclusion that the procuring cause doctrine still permits recovery, we need not reach the separate issue whether under § 12–61–803(2), C.R.S.1998, Hilbert also was a "transaction-broker," given the undisputed fact that he failed to comply with § 12–61–808(2)(a)(I) and § 12–61–808(2)(d), C.R.S. 1998. *See* 12–61–802(6), C.R.S.1998 (defining "transaction-broker" as: a broker who assists one or more parties throughout a contemplated real estate transaction with communication, interposition, advisement, negotiation, contract terms, and the closing of such real estate transaction without being an agent or advocate for the interests of any party to such transaction).

In summary, we uphold the trial court's determination that the realty agents were

entitled to a commission as the procuring cause of the sale.

## III.

On cross-appeal, the realty agents contend the trial court erred in refusing to award them damages for tortious interference with contract and for civil conspiracy. In this regard, the realty agents assert that the court incorrectly applied the law in these areas to the facts. We disagree.

The credibility of witnesses, sufficiency, probative effect, and weight of the evidence, as well as any inferences or conclusions to be drawn therefrom, are all within the province of the trial court. Its findings upon these matters will not be disturbed on review unless they are so clearly erroneous as to find no support in the record. *Jarnagin v. Busby, Inc.*, 867 P.2d 63 (Colo.App. 1993).

Tortious interference with a contract requires that: (1) the plaintiff have a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused plaintiff to incur damages. *See Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d 207 (Colo.1984) (adopting Restatement (Second) of Torts §§ 766–768 (1977) which address intentional interference with contract); *CJI–Civ.3d* 24:1 (1989).

Here, the realty agents maintain that all of the required elements were met, and that the trial court misapplied the law to the facts. Specifically, they point to the trial court's finding that Furlaud had participated in "freezing out" Hilbert in order to save $70,000 in commissions. However, the court also found that Furlaud was dissatisfied with Hilbert, that a buyer is entitled to work with any real estate professional he or she chooses, and that the required element of intentional inducement had not been proven.

As to a claim for civil conspiracy, a plaintiff must show that there were: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989).

Here, the trial court determined, with record support, that the realty agents had not established a meeting of the minds on the object or course of action, *i.e.*, that the realty agents not be paid.

Because the trial court's findings on the tortious interference and civil conspiracy claims are not clearly erroneous, we will not overturn them on appeal. *See Jarnagin v. Busby, Inc., supra.*

## IV.

The realty agents further contend on their cross-appeal that defendants' arguments are frivolous and interposed to harass and delay. Accordingly, they claim entitlement to sanctions, costs, and attorney fees. We are not persuaded.

Based on the standard set forth in C.A.R. 38(d) and in *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925 (Colo.1993), we conclude that defendants' statutory interpretation arguments were neither frivolous nor lacking in substantial justification. Nor does the record establish that defendants pursued this appeal in order to harass the realty agents or delay their recovery. Therefore, we reject the realty agents' request for sanctions, costs, and fees.

Judgment affirmed.

Judge JONES and Judge STERNBERG * concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.