**David SHANDS, d/b/a Oxford Group Commercial Properties, Plaintiff–Appellee,**

v.

**WM R. WINTON, LTD., Defendant–Appellant.**

No. 02CA1926.

Colorado Court of Appeals, Div. II.

Nov. 20, 2003.

Rehearing Denied Dec. 18, 2003.

Certiorari Denied May 24, 2004.

Law Office of Douglas D. Konkel, Douglas D. Konkel, Maureen J. Smith, Fort Collins, Colorado, for Plaintiff–Appellee.

Gablehouse Calkins & Granberg, LLC, Timothy R. Gablehouse, Donn L. Calkins, Denver, Colorado, for Defendant–Appellant.

Rothgerber Johnson & Lyons, LLP, Richard K. Clark, Denver, Colorado, for Amicus Curiae Colorado Association of Realtors.

Opinion by Judge GRAHAM.

Defendant, Wm R. Winton Ltd., a British limited liability company, appeals the trial court's judgment in favor of plaintiff, David Shands. We affirm.

The dispute concerns a real estate commission. Most of the salient facts are undisputed. Shands, a licensed real estate broker, had a listing for a portion of Winton's Larimer County property in 1998–1999. When the listing expired in September 1999, Shands left his sign on the property with Winton's permission. In May 2000, Fred Ziegler contacted another local real estate broker, Lou Kinzli, and expressed interest in the property. Over the next two months, Kinzli contacted Shands and made several offers on behalf of Ziegler to Winton, through Shands, to purchase the property.

On August 11, 2000, Shands and Winton entered into an exclusive right-to-sell designated party listing agreement, which provided Winton would pay Shands a commission under the following circumstances:

(1) Any Sale of the Property within the Listing Period [August 11, 2000, through December 31, 2000] by Seller, by Broker or by any other person;

(2) Broker's finding a buyer who is ready, willing and able to complete the transaction as specified herein by Seller; or

(3) Any Sale of the Property within 365 calendar days subsequent to the expiration of the Listing Period ("Holdover Period") to anyone with whom Broker negotiated and whose name was submitted, in writing, to Seller by Broker during the Listing Period (including any extensions thereof); provided, however, that Seller shall owe no commission to Broker under this subsection (3) if a commission is earned by another licensed real estate broker acting pursuant to an exclusive right-to-sell listing contract or an exclusive agency listing contract entered into during the Holdover Period.

The designated party provision in the listing agreement applied to Ziegler and Z WEST Development and Investment Inc., a Colorado corporation wholly owned by Ziegler. Z WEST was not yet formed when the agreement was executed.

On August 22, 2000, Z WEST and Winton entered into a purchase contract for the property. Shands was shown as the listing agent. Although the closing date was originally set for December 2000, that closing never occurred because Z WEST had difficulties securing financing. In January 2001, Shands's attorney wrote to Winton, Kinzli, and the closing agent, stating that Shands expected his share of the commission if the property was sold to Z WEST during the holdover period.

On February 1, 2001, Z WEST and Winton entered into a contract for the sale of the property with a closing date scheduled for February 16, 2001. Kinzli was listed as the transaction broker. The closing instructions acknowledged Shands's potential claim and directed that the $27,500 that Shands claimed (one-half of the commission) be placed in escrow.

Because Z WEST lacked the financial resources to purchase the property, Ziegler contacted SKESKE I, a Missouri limited liability company, to secure the funds. On February 14, 2001, Z WEST and Winton entered into a mutual rescission agreement, which provided that the parties:

[A]gree that upon [Winton] or his power of attorney, acknowledging and executing the certain Contract to Buy and Sell Real Estate with SKESKE I L.L.C., a Missouri limited liability company, dated February 14, 2001 the following shall occur:

[Z WEST] shall relinquish all rights under the contract dated February 1, 2001 and forfeit all the earnest money in the total amount of $14,000.

In March 2001, Ziegler filed articles of incorporation for WSZ, LLC. Z WEST and Ziegler's cousin each owned twenty-five percent of WSZ, and SKESKE owned fifty percent.

On May 4, 2001, there was a simultaneous closing whereby Winton conveyed the property to SKESKE who then conveyed the property to WSZ. Both conveyances were by warranty deeds, which were recorded in reverse order.

Shands filed a breach of contract claim against Winton. After a bench trial, the court found that Shands was entitled to one-half of the commission under the listing agreement, noting that, "[a]lthough under a different entity, Z WEST ultimately purchased an interest in the property under circumstances that suggests bringing in outsiders for additional financing at best; and to cut out [Shands] and benefit Kinzli at worst." The trial court entered judgment in favor of Shands for $27,500, plus interest. This appeal followed.

Winton contends that the trial court erred in determining that Shands was entitled to a commission under the listing agreement because the property was sold to SKESKE, a party with whom Shands never negotiated, whose name was never submitted in writing to Winton, and who was not identified in the listing contract as a purchaser. We disagree.

In reviewing a breach of contract case, we defer to the trial court's findings of fact if the record supports them, and we review its conclusions of law de novo. *Albright v. McDermond*, 14 P.3d 318 (Colo. 2000).

A broker's right to recover a commission is dependent on the terms of the listing agreement. *Horton–Cavey Realty Co. v. Spencer*, 37 Colo.App. 96, 544 P.2d 998 (1975). Written contracts that are complete and free from ambiguity express the intention of the parties and will be enforced according to their plain language. *Fallenius v. Walker*, 787 P.2d 203 (Colo.App.1989).

However, the purpose of a listing contract is to compensate a broker who is the procuring cause of a sale. Colorado has long recognized that a seller of real estate cannot circumvent the listing broker by changing the terms of the contract or selling to a strawman who then acts as a conduit and ultimately conveys the property to the purchaser who originally was procured by the broker. *See Hayutin v. De Andrea*, 139 Colo. 40, 337 P.2d 383 (1959).

Where the terms are changed and the seller sells directly to the buyer who was introduced to him by the broker, the broker is nevertheless entitled to a commission because he is the procuring cause of the sale. Such circumstances involve the direct appropriation of the client by the seller, and the holdover provision of the purchase contract entitles the broker to the commission. *Brewer v. Williams*, 147 Colo. 146, 152, 362 P.2d 1033, 1036 (1961)(quoting *Houston v. H.G. Wolff & Son Inv. Co.*, 94 Colo. 73, 77, 28 P.2d 255, 256 (1933): "[T]his was but another case of an owner circumventing his broker by appropriating his client and seeking to escape a commission by slight changes in the terms of the trade."). As the court in *Houston* observed, "[W]ithout paying for the seed, [the seller] sought to reap the field the broker had sowed. The scheme is very old, but so is the law which frustrates it." *Houston v. H.G. Wolff & Son Inv. Co.*, supra, 94 Colo. at 77, 28 P.2d at 256.

Designated party listing agreements present an added complexity of limiting the field of prospective buyers to those parties identified in the agreement. The listing agreement here clearly provided that Shands would be entitled to a commission if: (1) Shands, Winton, or any other person sold the property within the listing period to Ziegler or Z WEST, which was not yet formed; or (2) the property were sold within the holdover period to anyone with whom Shands negotiated and whose name he submitted in writing to Winton during the listing period.

The property was sold to SKESKE who then immediately transferred it to WSZ, another company formed by Ziegler at about

the same time. Shands did not negotiate with SKESKE or WSZ, and he did not submit their names in writing to Winton. The trial court's findings lead to the ineluctable conclusion that Shands was the procuring source of the sale because he negotiated with Ziegler, who ultimately acquired an interest in the property through a company he formed.

Winton argues that we would be expanding Colorado law if we were to affirm the trial court here because Colorado brokerage commission cases have awarded commissions to the complaining broker only where the seller knew of the transaction or participated in the scheme to circumvent the broker. Winton presented evidence that it did not know of the transaction or participate in any scheme. *Cf. Rauch v. Rhoades,* 172 Colo. 152, 470 P.2d 854 (1970)(buyer and seller changed terms); *Becker v. Arnold,* 42 Colo.App. 178, 591 P.2d 596 (1979)(seller attempted to avoid payment of commission by changing terms of sale).

Warning against extending the current body of Colorado law to "protect brokers at the expense of innocent sellers," Winton would have us rule that a buyer or a competing broker may circumvent the procuring broker so long as the seller is ignorant of the mechanism used. We find no logic in the proposition that although a seller may not circumvent a procuring broker, a buyer may. That the seller may not know the precise identity of a buyer does not relieve the seller of the contractual duty to make reasonable inquiry or to pay procuring brokers jointly if the listing broker was assisted by another broker.

Here, the fact that the seller claims not to have known the buyer does not, as a matter of law, preclude the broker from being the procuring source of a buyer. *See Brewer v. Williams, supra* (seller is obligated to pay the procuring broker). The trial court found that "Z West ultimately purchased an interest in the property" under terms that suggest Shands was circumvented to benefit the other broker, Kinzli. The record shows that the ultimate purchaser was formed by Ziegler and owned by Z WEST, SKESKE, and Ziegler's relative. Moreover, Winton was on notice that Shands expected a commission if Z WEST became an owner of the property.

Consequently, the trial court correctly interpreted the contract and, by implication, ruled that Shands was the procuring cause of the sale.

The judgment is affirmed.

Judge MARQUEZ and Judge ROTHENBERG concur.