Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 148. No. 15CA0188. Salazar, Commissioner of Agriculture v. Kubic.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 148

 
 



 Court of Appeals No. 15CA0188
 Adams County District Court No. 14CV30557
 Honorable Mark D. Warner, Judge


 John T. Salazar, Commissioner of Agriculture of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Lynn Kubic, d/b/a Willards Rodent Factory,

 Defendant-Appellant.


 JUDGMENT AFFIRMED

 Division VI
 Opinion by JUDGE TERRY
 Dunn and Nieto*, JJ., concur

 Announced October 8, 2015


 Cynthia H. Coffman, Attorney General, Billy L. Seiber, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 The Animal Law Center, LLC, Jay W. Swearingen, Englewood, Colorado, for Defendant-Appellant

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2015.

 
 Â¶1Â Â Â Â Â Â Â Â  Defendant, Lynn Kubic, d/b/a Willards Rodent Factory, appeals a judgment of the trial court that permanently enjoins her from operating her rodent-breeding facility without a valid license issued by plaintiff, John T. Salazar, the Colorado Commissioner of Agriculture. Kubic breeds mice and rats to sell as a food source for other animals. Raising novel arguments, she challenges the applicability of the Pet Animal Care and Facilities Act (PACFA), Â§Â§ 35-80-101 to -117, C.R.S. 2015, to her business. In a matter of first impression, we construe PACFA to apply to Kubicâs operation, and therefore affirm.

 I. Background

 Â¶2Â Â Â Â Â Â Â Â  Kubic raises and houses more than 200 mice and rats at her facility. The rodents are sold as feed for snakes and other carnivores. Until March 2013, Kubic had a valid license issued under PACFA to operate a âpet animal facility,â but she let it expire.

 Â¶3Â Â Â Â Â Â Â Â  In June 2013, the Commissioner issued a cease and desist order to Kubic because of the lapsed licensure. Despite the order, she continued to operate the unlicensed facility. The trial court granted the Commissionerâs request for a permanent injunction to prevent Kubic from operating without the required PACFA licenseÂ and from violating the cease and desist order. The injunction has been stayed pending the outcome of this appeal.

 II. Discussion

 Â¶4Â Â Â Â Â Â Â Â  Kubic contends that the trial court erroneously interpreted PACFAâs definitions of âpet animalâ and âpet animal facilityâ to require her to be licensed to operate her facility. We disagree.

 A. Standards of Review

 Â¶5Â Â Â Â Â Â Â Â  We review for an abuse of discretion the trial courtâs order permanently enjoining Kubicâs operation under PACFA, and we defer to the trial courtâs factual findings pertaining to the requested injunctive relief if they are supported by the record. See Stulp v. Schuman, 2012 COA 144, Â¶9.

 Â¶6Â Â Â Â Â Â Â Â  A court abuses its discretion when its ruling (1) is based on an erroneous understanding or application of the law or (2) is manifestly arbitrary, unreasonable, or unfair. People v. Esparza-Treto, 282 P.3d 471, 480 (Colo. App. 2011). In assessing whether a trial courtâs decision is manifestly arbitrary, unreasonable, or unfair, the question is not whether this court would have reached a different decision, but whether the trial courtâs decision fell within a range of reasonable options. E-470 Pub. Highway Auth. v. Revenig,Â 140 P.3d 227, 230 (Colo. App. 2006).

 Â¶7Â Â Â Â Â Â Â Â  It is the reviewing courtâs function to decide issues of law, including the interpretation of statutes. Huddleston v. Grand Cnty. Bd. of Equalization, 913 P.2d 15, 17 (Colo. 1996) (judicial deference to an administrative agencyâs interpretation of its governing statute is appropriate when the statute is subject to different reasonable interpretations and the issue comes within the agencyâs special expertise); see also El Paso Cnty. Bd. of Equalization v. Craddock, 850 P.2d 702, 705 (Colo. 1993) (âAn administrative agencyâs construction [of a statute] should be given appropriate deference, but is not binding on the court.â). We review questions of statutory interpretation de novo. Shelby Res., LLC v. Wells Fargo Bank, 160 P.3d 387, 389 (Colo. App. 2007).

 Â¶8Â Â Â Â Â Â Â Â  In interpreting a statute, our primary goals are to discern and give effect to the General Assemblyâs intent. Williams v. Crop Prod. Servs., Inc., 2015 COA 64, Â¶5. We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings. Id. We read the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of theÂ statuteâs language. Id. After doing this, if we determine that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. Id.

 B. Mice and Rats are âPet Animalsâ Governed by PACFA

 Â¶9Â Â Â Â Â Â Â Â  Kubic contends that her mice and rats are not within PACFAâs definition of âpet animal.â We disagree.

 Â¶10Â Â Â Â Â Â Â Â  Section 35-80-102(10), C.R.S. 2015, states:

 âPet animalâ means dogs, cats, rabbits, guinea pigs, hamsters, mice, rats, gerbils, ferrets, birds, fish, reptiles, amphibians, and invertebrates, or any other species of wild or domestic or hybrid animal sold, transferred, or retained for the purpose of being kept as a household pet, except livestock, as defined in subsection (9) of this section. âPet animalâ does not include an animal that is used for working purposes on a farm or ranch.

 Â¶11Â Â Â Â Â Â Â Â  The statutory language, ââ[p]et animalâ means . . . mice [and] rats,â makes this a simple matter to decide. Quite plainly, mice and rats are âpet animalsâ under PACFA.

 Â¶12Â Â Â Â Â Â Â Â  Nevertheless, we will separately address Kubicâs arguments for a different interpretation.

 1. Common Understanding of âPetâ

 Â¶13Â Â Â Â Â Â Â Â  PACFA does not define the word âpet,â as used in its title.Â According to Kubic, by using the undefined term âpetâ in the title, the legislature demonstrated its intent to limit PACFAâs applicability to animals that are âpetsâ as that word is commonly understood. We are not persuaded.

 Â¶14Â Â Â Â Â Â Â Â  This argument ignores the fact that the legislature has defined the term âpet animalâ in a very specific way. The legislatureâs decision to define âpet animalâ but not âpetâ indicates that we are to give no significance to the word âpetâ except as it is used in the phrase âpet animal.â Â§ 35-80-102(10). We will not adopt a tortured reading of this statutory provision, which, at least in the context presented here, has a perfectly clear meaning. See Boulder Cnty. Bd. of Equalization v. M.D.C. Constr. Co., 830 P.2d 975, 980 (Colo. 1992) (when statutory language is clear, courts will not subject the language to a strained or forced interpretation, and must presume that the legislative body meant what it clearly said); see also Farmers Ins. Exch. v. Bill Boom, Inc., 961 P.2d 465, 470 (Colo. 1998) (ââ[T]o ignore a [statutory] definition section is to refuse to give legal effect to a part of the statutory law of the state.ââ (quoting C. Dallas Sands, Statutes and Statutory Construction Â§ 27.02 (4th ed. 1985))).

 Â¶15Â Â Â Â Â Â Â Â  Therefore, we reject Kubicâs argument that because the miceÂ and rats she sells are used as food, and not as household pets, they are outside the statuteâs ambit.

 2. Other Listed Animals

 Â¶16Â Â Â Â Â Â Â Â  The parties have differing interpretations of the first appearance of the word âorâ in section 35-80-102(1), to which we have added italics for clarity: ââPet animalâ means dogs, cats, rabbits, guinea pigs, hamsters, mice, rats, gerbils, ferrets, birds, fish, reptiles, amphibians, and invertebrates, or any other species of wild or domestic or hybrid animal sold, transferred, or retained for the purpose of being kept as a household pet, except livestock . . . .â

 Â¶17Â Â Â Â Â Â Â Â  According to Kubic, the phrase âany other species of wild or domestic or hybrid animal sold, transferred, or retained for the purpose of being kept as a household petâ modifies every species of animal listed in the definition of âpet animal.â Therefore, she contends, mice and rats are not covered by the statute as âpet animalsâ unless they are also âsold, transferred, or retained for the purpose of being kept as a household pet.â The Commissioner counters that the phrase âsold, transferred, or retained for the purpose of being kept as a household petâ refers only to the various species listed after the italicized âor.â We agree with theÂ Commissioner that the phrase in question modifies only the animals listed after the italicized âor.â

 Â¶18Â Â Â Â Â Â Â Â  As discussed above, because the statute quite plainly says that ââ[p]et animalâ means . . . mice [and] ratsâ (emphasis added), and puts no additional conditions on whether such rodents are âpet animal[s],â Kubicâs animals come within the definition of âpet animal.â

 3. Exempted Animals

 Â¶19Â Â Â Â Â Â Â Â  Kubic next contends that her rodents fit within the statutory exemptions for livestock and working animals. This argument is similarly unpersuasive.

 Â¶20Â Â Â Â Â Â Â Â  Section 35-80-102(10) excludes from the definition of âpet animalâ âlivestock, as defined in [section 35-80-102(9)]â and any âanimal that is used for working purposes on a farm or a ranch.â Livestock is defined as:

 cattle, horses, mules, burros, sheep, poultry, swine, llama[s], and goats, regardless of use, and any animal that is used for working purposes on a farm or ranch, and any other animal designated by the [C]ommissioner, which animal is raised for food or fiber production.

 Â§ 35-80-102(9).

 Â¶21Â Â Â Â Â Â Â Â  This definition includes three categories of animals. In the first category are âcattle, horses, mules, burros, sheep, poultry, swine, llama[s], and goats.â Mice and rats do not fall within that group.

 Â¶22Â Â Â Â Â Â Â Â  The third category is described as âany other animal designated by the [C]ommissioner, which animal is raised for food or fiber production.â The Commissioner has not designated mice and rats as âlivestock,â and so this category is inapplicable.

 Â¶23Â Â Â Â Â Â Â Â  Therefore, to succeed on her claim, Kubic must show the mice and rats fit within the second category, namely, âanimal[s] used for working purposes on a farm or a ranch.â

 Â¶24Â Â Â Â Â Â Â Â  Kubic argues that â[r]aising animals for food or breeding stock to produce other animals . . . makes them working animalsâ and thus exempt under section 35-80-102(10). The term âanimal that is used for working purposesâ is not defined by PACFA.

 Â¶25Â Â Â Â Â Â Â Â  When a statute does not define a term, a court may look to the common usage of such terms. People v. Daniels, 240 P.3d 409, 411 (Colo. App. 2009). The words of statutes are to be given their plain and ordinary meanings. Town of Telluride v. Lot Thirty-Four Venture, L.L.C., 3 P.3d 30, 35 (Colo. 2000).

 Â¶26Â Â Â Â Â Â Â Â  Although we have found no definition of an âanimal used for working purposes,â the term âworking animalâ is commonly understood. âWorkâ is defined as âactivity in which one exerts strength or faculties to do or perform a specific task, duty, function, or assignment often being a part or phase of some larger activity.â Websterâs Third New Intâl Dictionary 2634 (2002). The only reasonable conclusion is that animals used âfor working purposesâ are those that would be expected to perform work â exerting strength or their faculties to perform specific tasks, duties, functions, or assignments. See id.

 Â¶27Â Â Â Â Â Â Â Â  Two examples of animals commonly viewed as working animals are âservice animalsâ and âpolice animals.â The Department of Justice defines a service animal as any âdog that is individually trained to do work or perform tasks for the benefit of an individual with a disability.â 28 C.F.R. Â§ 36.104 (2014). The Federal Law Enforcement Animal Protection Act defines âpolice animalâ as âa dog or horse employed by a Federal agency . . . for the principal purpose of aiding in the detection of criminal activity, enforcement of laws, or apprehension of criminal offenders.â 18 U.S.C. Â§ 1368(b) (2012). The defining characteristic of theseÂ working animals is that they are specially trained by humans to perform valuable tasks and duties for their owners, such as guiding a blind person or detecting explosives in a suitcase. Cf. Gabriela Sandoval, Service, Therapy, and Emotional Support Animals, Colo. Law., July 2015, at 69 (providing an overview of the rights and obligations attached to the different classifications of animals). Given the rural and agricultural character of much of our state, we also believe the legislature meant to include animals used in herding and guarding livestock, as well as in crop production.

 Â¶28Â Â Â Â Â Â Â Â  Kubicâs argument that her rodents are working animals is unpersuasive because there is no indication that she uses them to perform any function that could be considered âwork.â Instead, she concedes that they are sold merely as food for other animals. Thus, they do not meet the statutory definition of livestock in section 35-80-102(9), or the exemption for working animals under section 35-80-102(10). See M.D.C. Constr. Co., 830 P.2d at 980 (where statutory language is clear, courts will not subject statutory language to a strained or forced interpretation).

 III. Conclusion

 Â¶29Â Â Â Â Â Â Â Â  The judgment is affirmed.

 JUDGE DUNN and JUDGE NIETO concur.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back