2016 COA 46

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Stephen WUNDER, Defendant–Appellant.**

**Court of Appeals No. 14CA2492**

Colorado Court of Appeals,
Div. VII.

Announced March 24, 2016

Cynthia H. Coffman, Attorney General, Jay B. Simonson, First Assistant Attorney General, John Feeney–Coyle, Assistant Attorney General, Sarah Page Jackson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Stephen Wunder, Pro Se.

1. Sea to Ski's distributor, Traditions Travel Group, LLC, and three other individuals were

Opinion by JUDGE BERGER

¶ 1 In this civil action under part 1 of the Colorado Consumer Protection Act (CCPA), sections 6–1–101 to –115, C.R.S.2015, Colorado's Attorney General (AG) alleged that defendant, Stephen Wunder, engaged in multiple deceptive trade practices. The district court granted the AG's motion for summary judgment, concluding that Wunder violated the CCPA. Then, the AG filed an unverified motion for injunctive relief, civil penalties, and restitution. Based on the documents filed by the parties and without holding an evidentiary hearing, the trial court assessed statutory penalties of $515,000 and entered a money judgment against Wunder for restitution in excess of $6 million.

¶ 2 Wunder appeals and we affirm in part and reverse in part. We affirm the court's summary judgment determination that Wunder violated the CCPA. Because it is vague and overbroad, we reverse a portion of the permanent injunction and remand for reformulation. Because the court assessed civil penalties and restitution without holding an evidentiary hearing, we reverse those judgments and remand for further proceedings.

## I. Relevant Facts and Procedural History

¶ 3 Stephen Wunder operated a Colorado-based vacation and travel club known as Sea to Ski, LLC. Sea to Ski promised customers significant savings on travel through purportedly exclusive industry affiliations.

¶ 4 After receiving consumer complaints about Sea to Ski, the AG investigated Sea to Ski's business practices. The AG concluded that Sea to Ski's practices were misleading and sued Wunder and related parties under the CCPA.[1] The AG sought preliminary and permanent injunctions as well as civil penalties and restitution.

¶ 5 After an evidentiary hearing on the AG's motion for preliminary injunction, the court denied relief. The AG later moved for summary judgment on whether Wunder had violated the CCPA, and the trial court granted that motion.

defendants in the district court but are not parties to this appeal.

¶ 6 The AG then moved for permanent injunctive relief, civil penalties, and restitution. Without holding a hearing on that motion, the court ordered most of the relief requested by the AG, including injunctive relief, civil penalties, and restitution in excess of $6 million.

¶ 7 Wunder moved to "vacate, stay, or clarify, modify, and amend the court's permanent injunction," arguing that (1) the court's order incorporated by reference material outside of the injunction itself, in violation of C.R.C.P. 65(d); and (2) the injunction was vague and overly broad, in violation of C.R.C.P. 65(d) and Wunder's Fourteenth Amendment rights of due process and equal protection. The district court agreed with Wunder's first contention and corrected that error. It denied Wunder's motion in all other respects.

## II. The District Court Had Subject Matter Jurisdiction to Adjudicate Whether Wunder Violated the CCPA

¶ 8 Wunder contends that the money judgments and injunction are void because the district court lacked subject matter jurisdiction over CCPA violations committed against those Sea to Ski members who were nonresidents of Colorado.[2] We reject this argument.

¶ 9 Whether a court has subject matter jurisdiction is a question of law we review de novo. *Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11, 340 P.3d 1126.

¶ 10 Colorado district courts are vested with broad subject matter jurisdiction, determined solely by the state constitution and Colorado statutes. Colo. Const. art. VI, § 9; *Tulips Invs.*, ¶ 20. The CCPA expressly authorizes the AG to bring actions "in the appropriate district court of this state." § 6-1-110(1), C.R.S.2015.

¶ 11 Wunder cites no authority to support his argument that the district court lacked jurisdiction over CCPA violations committed

against nonresidents. The CCPA itself does not limit the court's jurisdiction based on the residency of the victims of deceptive trade practices and, indeed, makes no distinction between consumers who reside within or outside of Colorado. Thus, the court had subject matter jurisdiction to adjudicate whether Wunder violated the CCPA, irrespective of whether consumers in other states were harmed by those violations.

## III. The Court Correctly Granted Summary Judgment

¶ 12 Wunder asserts that the district court erred when it granted summary judgment against him. We reject this argument because the AG and the district court fully complied with the procedures required by C.R.C.P. 56 and the AG proved that it was entitled to judgment as a matter of law.

¶ 13 We review summary judgments de novo. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). Summary judgment is a drastic remedy appropriate only when the pleadings and supporting documents show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved in favor of the nonmoving party. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988). Once the moving party has met this burden, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712–13 (Colo.1987).

¶ 14 The CCPA forbids numerous deceptive trade practices, including: knowingly making a false representation as to the benefits of a service, making false or misleading statements concerning the price of services, making guarantees of goods or services without clearly and conspicuously disclosing the nature and extent of the guarantee and any

---

2. Wunder does not challenge the court's exercise of personal jurisdiction over him. It is undisputed that the court had personal jurisdiction over him, a Colorado resident. Exercise of personal jurisdiction over a nonresident of Colorado would be governed by Colorado's long-arm statute, section 13-1-124, C.R.S.2015, and the Due Process Clauses of the United States and Colorado Constitutions. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo.2005).

limitations on the guarantee, and failing to disclose material information about the services in order to induce the customer to enter into a transaction. § 6–1–105(1)(e), (*l*), (r), (u), C.R.S.2015.

¶ 15 In its summary judgment motion, the AG contended that Wunder misrepresented Sea to Ski's "exclusive" access to discounted vacation accommodations, misrepresented the price of those accommodations, guaranteed full refunds without disclosing the onerous conditions of the guarantees, and failed to disclose material information about supposedly free prize and bonus offers used to solicit customers. The AG supported its summary judgment motion with twenty-six exhibits, including:

- deposition testimony from Wunder and the other defendants;
- the preliminary injunction hearing transcript;
- the text of the "buyback guarantees" offered to members;
- affidavits of Sea to Ski members who claimed to have been deceived;
- Sea to Ski's nonexclusive supplier agreement with a timeshare provider (the title and text of which were hopelessly inconsistent with Sea to Ski's representations that it had an *exclusive* arrangement with the supplier); and
- membership and booking records.

¶ 16 This record establishes that the AG met its initial summary judgment burden to show that there were no disputed issues of material fact and that the AG was entitled to judgment as a matter of law. Wunder did not timely respond to the AG's motion. Indeed, Wunder's response was filed after the district court entered its order granting summary judgment for the AG.[3] He therefore did not timely establish that there were any disputed issues of material fact that precluded summary judgment on the question of whether Wunder violated the CCPA.

¶ 17 Because Wunder did not meet his burden to demonstrate a disputed issue of material fact, the district court properly granted summary judgment.

## IV. Portions of the Permanent Injunction Are Vague and Overbroad

### A. The Court Had Authority to Correct the Initial Errors in the Injunction

¶ 18 Wunder contends that the district court's initial injunction was void because it failed to comply with C.R.C.P. 65(d)'s prohibition against referring to documents outside of the injunction to determine what conduct was prohibited by the injunction. Although this defect was corrected by the court, Wunder nevertheless argues that this initial error prevented the court from later entering an injunction that conformed to C.R.C.P. 65. Wunder cites no support for this proposition.

¶ 19 We reject Wunder's argument that the initial, defective injunction somehow prohibited the court from correcting this error. The entry of a defective injunction, in the circumstances presented here, was not a jurisdictional defect, and the court retained the authority to correct the injunction. *See In re Rockford Prods. Corp.*, 741 F.3d 730, 734 (7th Cir.2013) (recognizing that if an injunction does not comply with Fed.R.Civ.P. 65, an appellate court may remand to correct the deficiency); *see also* C.R.C.P. 60(a). Because the corrected injunction complies with C.R.C.P. 65 in this respect, Wunder's argument to the contrary is meritless.

### B. The Injunction Is Vague and Overly Broad in Part

¶ 20 Wunder also attacks the substance of the revised injunction, claiming that it is vague and overly broad. We review the district court's injunction for an abuse of discretion. *Stulp v. Schuman*, 2012 COA 144, ¶ 9, —— P.3d ——. A court abuses its discretion if its decision is manifestly arbi-

---

3. Wunder initially was represented by counsel in the district court. Counsel later was authorized to withdraw and, during the summary judgment proceedings, Wunder appeared pro se. That fact, however, does not excuse his failure to timely respond to the summary judgment be-

cause a pro se litigant is subject to the same procedural rules as a party represented by counsel. *Knapp v. Fleming*, 127 Colo. 414, 414–15, 258 P.2d 489, 489–90 (1953). Wunder appears pro se in this appeal.

trary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Salazar v. Kubic*, 2015 COA 148, ¶ 6, 370 P.3d 342.

### 1. Vagueness

¶ 21 The terms of an injunction must be sufficiently precise to enable the party subject to the injunction to conform his or her conduct to the injunction. C.R.C.P. 65(d); *Colorado Springs Bd. of Realtors, Inc. v. State*, 780 P.2d 494, 498 (Colo.1989).

¶ 22 Paragraph 5 of the injunction entered against Wunder prohibits him from

> maintaining any ownership, managerial, or financial interest in, or receiving any financial benefit from, any entity that provides vacation or travel related services or products, or any entity that advertises, markets, or otherwise solicits consumers on behalf of any person or entity that provides vacation or travel related products or services.

¶ 23 The injunction does not define the term "vacation or travel related services or products." The term presumably includes airlines, railroads, automobile rental companies, and hotels. But does it include restaurants or other businesses that sometimes service travelers or vacationers? The text of the injunction does not answer that important question. Rule 65(d) requires that the injunction must be "specific in terms" and must "describe in reasonable detail ... the act or acts sought to be restrained." Paragraph 5 does not meet those requirements.

¶ 24 We reject the AG's suggestion that if Wunder was uncertain whether he could obtain particular employment, he had the right to approach the court for guidance. While in appropriate cases a district court may have jurisdiction to construe the reach of a previously entered injunction, the district court's proper function does not contemplate acting as an advisory board to determine whether prospective actions by a person subject to an injunction would violate the injunction.

¶ 25 For these reasons, we conclude that paragraph 5 of the injunction is vague, in violation of C.R.C.P. 65.

### 2. Overbreadth

¶ 26 An injunction is overly broad when it prohibits acts which the court does not have the authority to proscribe. *State ex rel. Meyer v. Ranum High Sch.*, 895 P.2d 1144, 1145 (Colo.App.1995). An injunction also is overly broad if it contains prohibitions which are unnecessary to effectuate the purposes of the injunction. *Osborn & Caywood Ditch Co. v. Green*, 673 P.2d 380, 383 (Colo. App.1983) (modifying an injunction because its terms were "more restrictive than as required by the facts").

¶ 27 The injunction prohibited Wunder, for all time, from participating in and receiving remuneration from the vacation or travel-related industries, which, as we noted above, is a broad, undefined term. Because the record does not support a finding that Wunder would violate the CCPA if he were employed as an airline baggage handler, a restaurant server, or many of the multitudes of employment opportunities available in the vacation or travel-related industries, paragraph 5 is overly broad.

¶ 28 The injunction contains nineteen paragraphs of prohibited acts, based on specific provisions of the CCPA and Wunder's adjudicated conduct. Wunder is appropriately enjoined from engaging in these acts, regardless of the industry with which he is associated. Given these specific prohibitions, the paragraph 5 catchall provision which we hold to be vague and overly broad may be unnecessary. But the formulation of an injunction is within the discretion of the trial court, and thus we remand to the district court to reformulate that portion of the injunction. *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 980 (Colo.1993).

## V. The Restitution Order and Civil Penalties Must Be Reversed and Remanded for Further Proceedings

¶ 29 Wunder argues that the district court improperly calculated the civil penalty and restitution amounts. Because an evidentiary hearing was required before imposing civil penalties and restitution, we reverse those judgments and remand for a hearing.

¶ 30 "A trial court enjoys broad discretion in fashioning appropriate remedies under the CCPA." *People v. Shifrin*, 2014 COA 14, ¶ 83, 342 P.3d 506. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Kubic*, ¶ 6.

## A. Restitution

¶ 31 The CCPA authorizes a court to "make such orders or judgments ... which may be necessary to completely compensate or restore to the original position of any person injured by means of [a deceptive trade practice] or to prevent any unjust enrichment by any person through the use or employment of any deceptive trade practice." § 6-1-110(1).

¶ 32 The question presented is what process is required before a court enters a judgment for restitution under the CCPA. The AG contends, for several reasons, that the district court had discretion to dispense with a hearing on the amount of civil penalties and restitution. We reject those arguments and hold that under the circumstances presented, an evidentiary hearing was required.

¶ 33 "Due process requires advance notice and an opportunity to be heard prior to state action resulting in deprivation of a significant property interest." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 318 (Colo. App.2009) (alteration omitted) (quoting *Mountain States Tel. & Tel. Co. v. Dep't of Labor and Emp't*, 184 Colo. 334, 338, 520 P.2d 586, 588 (1974)), *aff'd*, 252 P.3d 1071 (Colo.2011). The procedural due process requirements in a particular case involve a three-factor balancing test:

(1) the kind of private interest at stake; (2) the risk of an erroneous deprivation of that interest and the probable value of additional or substitute procedures in reducing the risk; and (3) the public or governmental interest involved and the fiscal and administrative burden additional procedural requirements would entail.

*Id.* (quoting *Patterson v. Cronin*, 650 P.2d 531, 537 (Colo.1982)).

¶ 34 Application of this balancing test results in the conclusion that a trial court may not, consistent with procedural due process, enter judgments for civil penalties and restitution on disputed facts without holding an evidentiary hearing.

¶ 35 First, Wunder's interest to be free from a court judgment in excess of $6 million is the type of private interest that implicates procedural due process. Second, the probable value of an evidentiary hearing to reduce the risk of error in that determination is significant. And, third, the holding of an evidentiary hearing would not greatly or unfairly affect the public's or the government's interest. In any event, any interest of the public or the government in dispensing with an evidentiary hearing is far outweighed by Wunder's interests. *Id.* at 318.

¶ 36 In an analogous case, *Blood*, the trial court entered an order under section 13-21-102(3), C.R.S.2015, increasing the amount of exemplary damages based upon the defendant's willful and wanton conduct after the accident that gave rise to the defendant's liability. The court did not hold a hearing in making that determination, and this court reversed and remanded for a hearing, holding that without such a hearing, "the trial court could not have determined whether 'willful and wanton manner' had been proven beyond a reasonable doubt." *Id.* at 319.

¶ 37 *Federal Insurance Co. v. Ferrellgas, Inc.*, 961 P.2d 511, 515 (Colo.App.1997), provides further support for our conclusion that a hearing is required. In *Ferrellgas*, the trial court entered judgment for expert witness fees in the precise amount requested by the plaintiff without holding a hearing. But because, unlike court filing fees or lay witness fees, the amount of expert witness fees is not "verifiable by reference to any statute or fixed standard," the court held that the defendant was entitled to an evidentiary hearing to determine that amount. *Id.*; *see also SaBell's, Inc. v. City of Golden*, 832 P.2d 974, 979 (Colo.App.1991) (holding that the defendant was entitled to an evidentiary hearing on whether attorney fees should be assessed for improper pleading of affirmative defenses); *Maddalone v. C.D.C., Inc.*, 765 P.2d 1047, 1049 (Colo.App.1988) (stating that

garnishees were entitled to evidentiary hearing on the validity of the debt that underlay the garnishment).

¶ 38 Relying primarily on C.R.C.P. 121, section 1–15(4), the AG argues that the rules of civil procedure do not necessarily require evidentiary hearings prior to entry of a money judgment. C.R.C.P. 121, section 1–15(4) states that motions should be determined on the written motions and briefs "[i]f possible." But the plain meaning of "if possible" incorporates the principle that disputed issues of fact, including the amount of damages, *cannot* be determined on written motions and briefs. Thus, C.R.C.P. 121, section 1–15(4) does not bear the heavy weight of the AG's argument because the amount of restitution is a disputed issue of material fact that must be determined on evidence presented at a hearing. *See also Dunlap v. Long*, 902 P.2d 446, 449 (Colo.App.1995) (holding that C.R.C.P. 121, section 1–15(4) does not grant discretion to dispense with an evidentiary hearing when the amount of attorney fees at issue was not verifiable by reference to any statute or other fixed standard).

¶ 39 As in *Ferrellgas* and *Dunlap*, the amounts of civil penalties and restitution imposed by the district court against Wunder were not "verifiable by reference to any statute or fixed standard"; thus, a hearing was required.

¶ 40 There is one principal exception to this rule that is pertinent here: summary judgment, authorized by C.R.C.P. 56.[4] That rule authorizes a court to enter judgments, including money judgments, without a trial, but only under the circumstances specified in the rule. The supreme court has emphasized, time and again, that summary judgment is a drastic remedy, authorized only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Brodeur*, 169 P.3d at 146.

¶ 41 At the instance of the AG, the trial court departed from this structure. After the trial court properly granted summary judgment holding that Wunder violated the CCPA, the AG filed a separate, unverified motion for permanent injunctive relief, which included requests for civil penalties and restitution. The motion was not filed under C.R.C.P. 56 and did not comply with that rule.

¶ 42 The AG does not dispute that "defendants must be allowed to put forth evidence showing that certain amounts should offset the sanctions assessed against them;" but it contends that Wunder had the opportunity to do so at the preliminary injunction hearing (at which Wunder prevailed) and "in subsequent briefings."[5] We reject this argument as well.

¶ 43 We also reject, as inconsistent with C.R.C.P. 56, any suggestion that a party opposing the entry of a money judgment must make its case in documents in opposition to the entry of such a judgment even when the movant fails to comply with Rule 56.[6] Under C.R.C.P. 56, if a moving party establishes by documents and affidavits admissible under C.R.C.P. 56(e) that there is no disputed issue of material fact, the burden then shifts to the nonmoving party to establish that there are disputed issues of material fact. If the nonmoving party does not meet that burden, and if the moving party is entitled to judgment as a matter of law, then the court may enter summary judgment in favor of the moving party, including a money judg-

4. The summary judgment order, which we uphold, stated that "[p]laintiffs are entitled to civil penalties, restitution, disgorgement, permanent injunctive relief, and fees and costs as provided by law." But the summary judgment motion did not request the court to enter specific amounts of civil penalties or restitution, and the court did not adjudicate those amounts in its order granting summary judgment.

5. Even on its own terms, the AG's argument that Wunder did not dispute the amount of the money judgments fails because, as the AG concedes, that issue was raised. In its supplemental brief, the AG states that "Wunder did not address the monetary relief sought by the State until the seventh of eight pages in his *Response/Objection*." The fact that a party raises an argument on the seventh page of an eight-page document, is, by itself, devoid of legal significance.

6. Of course, the parties may stipulate as to the relevant facts and agree that the court may enter money judgments without an evidentiary hearing, but no such stipulation or agreement occurred here.

ment. But if the movant has not met its initial summary judgment burden, the opposing party has no obligation whatsoever to establish that there are disputed issues of material fact. *Ginter v. Palmer & Co.*, 196 Colo. 203, 207, 585 P.2d 583, 585 (1978).[7]

¶ 44 Even if Wunder was required to identify the evidence that he would present in opposition to the claims for penalties and restitution, liberally construing his response, we conclude he met that burden. C.J.C. 2.6 cmt. 2; *see People v. Bergerud*, 223 P.3d 686, 696–97 (Colo.2010). In his response, he disputed the amount of money the AG claimed he received, a dispute which may be relevant to the amount of restitution ordered. *See Redd Iron, Inc. v. Int'l Sales & Servs. Corp.*, 200 P.3d 1133, 1136 (Colo.App.2008). He also disputed the statistics on which the AG requested restitution. These assertions sufficiently demonstrated that there were factual disputes that needed to have been resolved before the court entered money judgments against Wunder. Similarly, although he did not use those precise words, Wunder's opposition document sought an opportunity to be heard on the amounts claimed by the AG.

¶ 45 In essence, the AG asks us to invent a new type of summary judgment procedure that applies whenever a party asks the court to enter a money judgment and, for whatever reason, the party does not see fit to comply with Rule 56. We reject this argument because neither this court nor the district court has the authority to invent or apply novel procedures that circumvent the requirement of an evidentiary hearing merely because such procedures might save time and money. *See Antero Res. Corp. v. Strudley*, 2015 CO 26, ¶ 3, 347 P.3d 149.

¶ 46 The entry of this significant money judgment against Wunder violated the rules of civil procedure and deprived Wunder of due process of law. Accordingly, the judg-

ment is reversed. On remand, the court must hold an evidentiary hearing and make findings of fact and conclusions of law under C.R.C.P. 52.

¶ 47 In doing so, the court must employ a reasonable method to calculate the amount of restitution. *Shifrin*, ¶¶ 87–88. The restitution amount should equal an amount that "completely compensate[s] or restore[s] to the original position" any person injured by Wunder's deceptive trade practices. § 6–1–110(1). The calculation of that amount must be supported by evidence, with some "reasonable basis of computation," even if the result reached is an approximation. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988–89 (9th Cir.2015) (interpreting a substantially similar statute).[8]

### B. Civil Penalties

¶ 48 The court may order any person who violates the CCPA to pay a civil penalty of not more than $2000 for each consumer or transaction involved. § 6–1–112(1)(a), C.R.S. 2015.

¶ 49 A court should consider several factors in its determination of the amount of civil penalties under section 6–1–112(1)(a) even though those factors are not a "litmus test" for the imposition of civil penalties. *Shifrin*, ¶ 97. These factors include: (1) the good or bad faith of the defendant; (2) the injury to the public; (3) the defendant's ability to pay; and (4) the desire to eliminate the benefits derived by violations of the CCPA. *State ex rel. Woodard v. May Dep't Stores Co*, 849 P.2d 802, 810 (Colo.App.1992), *aff'd in part and rev'd in part on other grounds*, 863 P.2d 967, 969 (Colo.1993). The court must assess the penalties based on each consumer and transaction involved, subject to a statutory cap of $500,000 for a "related series of violations." § 6–1–112(1)(a).

---

7. Whether Wunder made proper pretrial disclosure of information, witnesses, and documents that support any of his defenses to the amount of liability claimed by the AG is an entirely separate question which we do not address in this opinion. To the extent Wunder seeks to introduce witnesses or exhibits at the evidentiary hearing that he failed to disclose in accordance with C.R.C.P. 16, the district court has ample tools at its disposal to limit or prevent the admission of

such evidence if necessary to avoid injustice. *See, e.g.,* C.R.C.P. 37(c).

8. Because we reverse the judgment and remand for an evidentiary hearing, we have no occasion to address whether the information presented by the AG in its motion was sufficient to support the restitution judgment.

¶ 50 Applying a different statute, a division of this court held that an evidentiary hearing is required when a court must consider multiple factors in determining the amount of civil penalties. *Colo. Dep't of Pub. Health & Env't v. Caulk*, 969 P.2d 804, 812 (Colo.App. 1998). Although *Caulk* addressed the imposition of civil penalties under a statute that expressly required a court to consider specific factors in determining the amount of the penalty, its reasoning is instructive here where the court may, but is not required to, consider specific factors.

¶ 51 Thus, for the same reasons we reverse the restitution judgment, we also reverse the civil penalties judgment so that the parties may present evidence regarding the factors relevant to determining the amount of the civil penalties.

## VI. Conclusion

¶ 52 The summary judgment against Wunder is affirmed. The permanent injunction is reversed to the extent discussed above and the case is remanded to the district court for reformulation of the permanent injunction. The money judgments for civil penalties and restitution are reversed, and the case is remanded for an evidentiary hearing. Based upon the evidence presented at that hearing, the court must make findings of fact and conclusions of law in accordance with C.R.C.P. 52 and enter appropriate judgments.

JUDGE RICHMAN and JUDGE DUNN concur.