WINSTON FINANCIAL GROUP, INC.,
a Colorado corporation, and William
D. Winston, Plaintiffs–Appellees,

v.

FULTS MANAGEMENT, INCORPORAT-
ED, a Colorado corporation, and John
Hancock Mutual Life Insurance Compa-
ny, Defendants–Appellants.

No. 92CA1858.

Colorado Court of Appeals,
Div. III.

Jan. 13, 1994.

Rehearing Denied March 3, 1994.

Shaw, Spangler & Roth, P.C., Robert C. Roth, Jr., John L. Lawrence, Peggy A. Richter, Denver, for plaintiffs-appellees.

Laff Stein Campbell & Tucker, Ronald C. Tucker, Denver, for defendants-appellants.

Opinion by Judge HUME.

Defendant, John Hancock Mutual Life Insurance Co., appeals from a judgment entered at the conclusion of a bench trial that awarded plaintiff, Winston Financial Group, Inc., a real estate brokerage commission for securing a tenant for space owned by defendant. We affirm.

Plaintiff initiated a relationship with a business entity to assist it in securing office space. Defendant's property was among those plaintiff showed to the entity that ultimately became defendant's tenant.

Shortly thereafter, the prospective tenant reassigned responsibility for locating new office space to a different employee. Upon meeting this employee, defendant's leasing agent commented that plaintiff had already shown the prospective tenant the defendant's property. However, the prospective tenant denied that plaintiff represented its interests.

Subsequently, the prospective tenant and defendant's leasing agent entered into rental negotiations without plaintiff, and neither of them informed plaintiff of such negotiations. Plaintiff made numerous attempts to contact the prospective tenant to inquire about its search for office space. Late in the negotiations, the prospective tenant admitted to plaintiff only that it "might have some interest" in the space.

After the lease contract was signed, both the tenant and defendant denied that plaintiff was entitled to any brokerage commission.

I.

Defendant first contends that the trial court erred in determining that plaintiff was its subagent. We disagree.

An agency relationship will result if the parties intend to enter into a relationship to which the law attaches the legal consequences of agency. In a residential context, listing property in the multiple listing service, absent a written agreement to the contrary, is an offer of subagency, and therefore, cooperating brokers are agents of the listing brokers and in a line of agency with the seller. *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987).

We conclude that this analysis is equally applicable in a commercial context. A lessor's relationship with its leasing agent paral-

lels that of a multiple listing service in that the leasing agent is not necessarily expected to procure the tenants personally, but rather is the intermediary for the lessor and cooperating brokers.

Additionally, here, the management and leasing contract between defendant and leasing agent authorizes leasing agent to "enlist the services of other real estate brokers" and provides a separate commission schedule if a cooperating broker should become involved.

Therefore, we conclude that the trial court did not err in finding that plaintiff was defendant's subagent.

## II.

Defendant next contends that there was insufficient evidence to support several of the trial court's findings. We disagree.

■ Sufficiency of evidence and inferences and conclusions drawn therefrom must be viewed in the light most favorable to the prevailing party in the trial proceedings. *Hayes v. North Table Mountain Corp.*, 43 Colo.App. 467, 608 P.2d 830 (1979). Such findings will not be disturbed if they are supported by evidence in the record. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### A.

■ Contrary to defendant's contention, there is evidentiary support for the finding that the parties had agreed that defendant would pay plaintiff a 6% commission upon plaintiff presenting a tenant who executed a lease.

■ If parties fail to agree to sufficiently definite terms, there is no meeting of the minds and no valid contract exists. *Schmidt v. Frankewich*, 819 P.2d 1074 (Colo.App. 1991).

■ However, a contract will not fail for indefiniteness if missing terms can be supplied by law, presumption, or custom. *Higbie v. Johnson*, 626 P.2d 1147 (Colo.App. 1980).

Here, there was evidence that the parties discussed that defendant paid cooperating brokers a 6% commission and that they both were familiar with the commercial leasing business.

Additionally, it is customary, unless the parties agree otherwise, that a broker is entitled to a commission upon producing a buyer who is ready, willing, and able to buy (or lease) on the seller's terms. *Moore & Co. v. T-A-L-L, Inc.*, 792 P.2d 794 (Colo.1990).

Therefore, we conclude that the evidence supports the trial court's finding that an express contract existed.

In light of our resolution of this issue, we need not address the trial court's alternative basis for judgment on a theory of implied contract.

### B.

Defendant next contends that the trial court erred in finding that plaintiff was entitled to a commission as the procuring cause of the lease. We disagree.

■ Whether the broker is the procuring cause rests on whether the broker set in motion a chain of events which, without break in continuity, resulted in a sale, *Cowgill v. Neet*, 127 Colo. 184, 255 P.2d 399 (1953), or lease. *Zaniewski v. Mancinone*, 37 Conn.Super. 698, 435 A.2d 50 (1981).

■ Further, as a matter of law, when the buyer and seller involved in a real estate contract intentionally exclude a broker from negotiations, they cannot defend on the basis that the broker was not the procuring cause. *Brewer v. Williams*, 147 Colo. 146, 362 P.2d 1033 (1961).

■ Here, there was evidence that plaintiff identified and showed defendant's property to tenant and that the showing set into motion tenant's leasing of the office space. There was also evidence that tenant and defendant intentionally excluded plaintiff from participation in further rental negotiations.

Accordingly, we conclude that the trial court did not err in finding that plaintiff was the procuring cause of the lease.

## C.

Lastly, defendant contends that the trial court erred in finding that plaintiff did not breach a fiduciary duty owed to defendant by requesting an exclusive agency relationship with tenant and by showing tenant additional properties. We disagree.

A real estate broker owes a fiduciary duty of good faith and loyalty to its principal. *Moore & Co. v. T–A–L–L, Inc., supra.*

The scope of an agent's duties is determined by the express and implied provisions of the agency agreement. *Burman v. Richmond Homes, Ltd.,* 821 P.2d 913 (Colo. App.1991). Unless the parties agree otherwise, customs normally found in that agency relationship are included within the implied provisions of the contract. Restatement (Second) of Agency § 376 (1958).

Here, the evidence indicated that it was common for brokers to show prospects more than one rental property and that defendant paid such brokers their commission if a prospect subsequently leased space from defendant. However, no evidence or legal authority was presented to support the proposition that a broker's unsuccessful effort to obtain an exclusive agency on behalf of a tenant alters the implied provisions of the agreement actually reached.

Therefore, we conclude there was sufficient evidence in the record to support the trial court's finding that plaintiff did not breach a fiduciary duty owed to defendant by showing the tenant other available properties.

The judgment is affirmed.

METZGER and PLANK, JJ., concur.