COLORADO COURT OF APPEALS                                    **2017COA44**

Court of Appeals No. 15CA2132
Elbert County District Court No. 13CV30038
Honorable Michael J. Spear, Judge

International Network, Inc., a Colorado corporation,

Plaintiff-Appellee,

v.

Michael W. Woodard,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE CASEBOLT*
Webb and Nieto*, JJ., concur

Announced April 6, 2017

Reynolds Gillette LLC, Brian R. Reynolds, Patrick Gillette, Denver, Colorado, for
Plaintiff-Appellee

Richard J. Banta, P.C., Richard J. Banta, Denver, Colorado; Robinson Waters
& O'Dorisio, P.C., Tracy L. Ashmore, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    This case involves the admitted breach of a clause contained in an exclusive right-to-sell real estate listing agreement obligating the seller to "conduct all negotiations for the sale of the property only through Broker, and to refer to Broker all communications received in any form from . . . prospective buyers . . . or any other source" (referral provision).  Defendant, Michael W. Woodard (seller), appeals the judgment in favor of plaintiff, International Network, Inc., the real estate broker (broker), in the amount of the commission that would have been payable under the listing agreement had seller not breached the above-quoted clause.  We affirm.

I.    Background

¶ 2    In April 2006, seller, who owned a ranch consisting of approximately 100 acres, signed an exclusive right-to-sell listing agreement with broker.  As pertinent here, the agreement established a list price of $4.5 million and provided for a percentage commission to be paid to broker upon sale.  The parties agreed to a six-month listing period, but seller could cancel the agreement at any time upon written notice.

¶ 3     Approximately four months into the listing period, seller began

negotiating with an attorney who represented a group of potential

buyers.  Seller did not disclose his negotiations to broker and

admitted at trial that he had intentionally concealed the

discussions to avoid payment of a commission.

¶ 4     About a month after negotiations started, seller cancelled the

listing agreement without providing a reason.  Broker ceased any

sales activity concerning the property.  After the listing period had

expired, but within a ninety-day holdover period set forth in the

agreement, seller and the buyers finalized an agreement, resulting

in the sale of the property for $3.6 million.

¶ 5     Almost seven years later, broker initiated this action against

seller for breach of contract based upon seller's failure to comply

with the referral provision.

¶ 6     Following trial, a jury found in favor of broker and awarded

$252,000 in damages — the commission that would have been

owed under the listing agreement.

## II.     Statute of Limitations

¶ 7     Seller contends that the trial court erred in denying his motion

for directed verdict and his post-trial motion for judgment

notwithstanding the verdict because broker's breach of contract claim was barred by the statute of limitations. We disagree.

## A. Standard of Review

¶ 8 We review de novo a trial court's rulings on motions for directed verdict and judgment notwithstanding the verdict. *Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.*, 2016 COA 176M, ¶ 18. When the motion concerns a factual matter, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence in that party's favor. *Hall v. Frankel*, 190 P.3d 852, 862 (Colo. App. 2008). Such motions should be granted only when the evidence "compels the conclusion that reasonable jurors could not disagree and that no evidence or inference therefrom had been received at trial upon which a verdict against the moving party could be sustained." *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 19.

## B. Applicable Law

¶ 9 A breach of contract claim "shall be commenced within three years after the cause of action accrues." § 13-80-101(1)(a), C.R.S. 2016. In this context, a cause of action accrues "on the date the

breach is discovered or should have been discovered by the exercise of reasonable diligence." § 13-80-108(6), C.R.S. 2016.

¶ 10    The cause of action is discovered when the party obtains knowledge of the facts essential to the claim, not knowledge of the legal theory supporting it. *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 492 (Colo. App. 2008). Such knowledge includes information that would lead a reasonable person to inquire further. *Id.*

¶ 11    When a claim accrues and whether it is barred by the statute of limitations are generally questions of fact for the jury to resolve. *Sterenbuch v. Goss*, 266 P.3d 428, 432 (Colo. App. 2011). But "when the material facts are undisputed and reasonable persons could not disagree about their import, these questions may be decided as a matter of law." *Id.*

## C.    Analysis

¶ 12    It is undisputed that seller breached the referral provision in 2006. But the date when broker discovered or should have discovered seller's breach is not so clear cut.

¶ 13    Seller argued at trial that the abrupt manner in which he cancelled the listing agreement, the circumstances surrounding the

4

cancellation, and the recording of a deed transferring the property a few months later gave rise to a duty on broker's part to inquire further into the sale. Upon broker's investigation, seller asserted it would have discovered the facts essential to its claim. Thus, the argument proceeded, through the exercise of reasonable diligence, broker should have discovered the breach of contract in 2006, and because broker filed this action more than seven years later, the statute of limitations barred its claim.

¶ 14     Broker agreed that seller cancelled the listing agreement in 2006. But it asserted that this cancellation provided no indication that seller had been negotiating with the buyers in violation of the agreement. Instead, broker asserted that it had no knowledge of seller's actions until 2011, when broker's agent heard seller's testimony in another lawsuit. In that case, seller testified that he had negotiated the sale of his property with the buyers' attorney in violation of the listing agreement and that he had intentionally concealed this negotiation from broker to avoid paying a commission. According to the agent, only upon hearing this testimony did he discover seller's breach. The agent also testified that, before hearing such testimony, he did not have any knowledge

or suspicion that seller had breached the agreement. Broker therefore asserted that its commencement of this action in 2013, within three years of its discovery of the breach, was timely.

¶ 15   These arguments were presented to the jury, and it rejected seller's statute of limitations defense. Based upon the record, we cannot conclude that the evidence — viewed in the light most favorable to broker — compels a different result.

¶ 16   Seller had the absolute right to terminate the listing agreement at any time. Hence, the cancellation some four months into the six-month period did not, contrary to seller's contention, place broker on notice of a potential claim as a matter of law. And contrary to seller's additional contention, the recording of the deed conveying the property, by itself, did not put broker on notice of the facts essential to its cause of action or reasonably alert broker of the need to inquire further as a matter of law.

¶ 17   To be sure, the recording of the deed provides notice to "all persons . . . claiming any interest in [the] property." § 38-35-106(1), C.R.S. 2016. But broker never claimed an interest in the property. Instead, it claimed a right to recover damages from seller's breach of the listing agreement.

¶ 18    Seller also points to nothing within the recorded deed that would have alerted broker that seller had engaged in negotiations with the buyers in violation of the listing agreement.  At most, the deed evidenced the sale of property a few months after the listing had expired, which discloses nothing of the facts essential to broker's breach of contract claim.  And it did not name the potential purchaser broker had identified under the holdover provision.

¶ 19    We acknowledge the testimony of broker's agent that could be viewed as conflicting with broker's position.  The agent testified that he had previously represented sellers who had gone behind his back on transactions; that he had been involved in previous disputes over real estate commissions; that seller refused to communicate with him after terminating the listing agreement; that he had seldom been fired from a listing agreement; and that he had accused seller, in a phone message, of going behind his back with a different potential purchaser, whom broker identified to seller's attorney under the ninety-day holdover provision of the listing agreement.  The agent also agreed that the sale of this property would have earned him a large commission.  Finally, the agent stated that, after he received a letter from seller's attorney

reiterating that the listing was cancelled and directing broker to communicate only with the attorney, he voluntarily "walked away" from the commission.

¶ 20    But this evidence merely created conflicts in the facts for the jury to consider in light of the agent's testimony that he did not have any knowledge or suspicion that seller had negotiated with the ultimate buyers during the term of the listing.  In our view, reasonable jurors could disagree about the effect of all the record evidence, and there is sufficient evidence or inferences therefrom upon which a verdict against seller may be sustained.

¶ 21    We therefore cannot conclude that the material facts regarding broker's discovery of the breach compel overturning the jury's verdict.  Accordingly, the court did not err in denying seller's motions for directed verdict and judgment notwithstanding the verdict based on the statute of limitations.

¶ 22    Seller argues for the first time on appeal that the court erred by shifting the burden of proof concerning the statute of limitations defense to him.  Because this issue was not raised in the trial court, we decline to address it.  *See JW Constr. Co. v. Elliot*, 253 P.3d 1265, 1271 (Colo. App. 2011) (an appellate court will not address

for the first time on appeal an issue not raised in or decided by the trial court); *see also Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1108 (Colo. 2008).

## III.  Jury Instructions

¶ 23    Seller contends that the court erred in refusing his tendered jury instructions on (1) the elements of liability for a real estate commission claim and (2) the defense of laches.  We consider and reject each contention in turn.

### A.  Standard of Review

¶ 24    We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law.  *Nibert v. Geico Cas. Co.*, 2017 COA 23, ¶ 8.  If they did, we review the trial court's decision to give or reject a particular jury instruction for an abuse of discretion.  *Id.*  A court abuses its discretion when it misconstrues or misapplies the law, or when its decision is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.  Real Estate Commission

¶ 25    Seller tendered a jury instruction setting forth the elements of liability for recovery on a real estate commission claim.  He argued that the instruction was appropriate because broker could only

9

recover a commission if it was the procuring cause of the property's sale. Tracking the model jury instruction, the tendered instruction stated the following:

> For [broker] . . . to recover from [seller] . . . on its claim to recover a real estate commission, you must find all of the following have been proved by a preponderance of the evidence:
>
> 1. [Broker] held a valid license as a real estate broker under the laws of Colorado;
>
> 2. [Broker], acting as a real estate broker, entered into a listing agreement with [seller] to sell [seller's] property;
>
> 3. [Broker] produced a purchaser who was ready, willing and able to complete the purchase of the property according to the terms of the listing agreement; and
>
> 4. The sale of the property was completed between [seller] and the purchaser or prevented by [seller's] refusal or neglect to complete the sale.

*See* CJI-Civ. 4th 30:56 (2016).

¶ 26   The court rejected the instruction, concluding that it was "based upon the right that a broker has to receive a commission," but that it was not applicable in this case because seller's asserted breach of the referral provision "interfere[d] with the broker's ability to be a procuring agent." Seller argues that by failing to provide the

real estate commission instruction, the court erroneously instructed the jury on the law. We disagree.

¶ 27  Absent circumstances not present in this case, the general rule in Colorado is that a real estate broker is entitled to a commission on the sale of a property only when the broker produces a buyer who is ready, willing, and able to purchase the property on the seller's terms. § 12-61-201, C.R.S. 2016; *see Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151, 153 (Colo. App. 1999). That is, the broker must be the procuring cause of the sale. To be the procuring cause, the broker is required to set in motion a continuous chain of events that results in the sale of the property. *Telluride Real Estate*, 996 P.2d at 153.

¶ 28  Other divisions of this court have recognized an exception to this general rule when the buyer and seller intentionally exclude the broker from the property sale. *See id.*; *Winston Fin. Grp., Inc. v. Fults Mgmt., Inc.*, 872 P.2d 1356, 1358 (Colo. App. 1994). Under these circumstances, the seller may not defend on the basis that the broker was not the procuring cause. *Telluride Real Estate*, 996 P.2d at 153; *Winston Fin. Grp.*, 872 P.2d at 1358; *see generally Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo. App. 2002) (a contracting party

11

who causes the other party's failure to comply with the contract terms cannot take advantage of that failure).  When this exception has been previously considered, however, the broker had at least some part in identifying the potential buyer before the broker's later exclusion from the sale.  *Telluride Real Estate*, 996 P.2d at 153; *Winston Fin. Grp.*, 872 P.2d at 1357.

¶ 29    The parties do not point to a Colorado case — nor have we found one — that has considered the effect of the procuring cause requirement when the broker had no contact with and was completely unaware of a potential buyer who commenced negotiations with the seller during the term of an exclusive listing agreement containing a referral clause and later purchased the listed property.

¶ 30    Other jurisdictions faced with this question generally agree that the seller's breach of the referral clause of an exclusive right-to-sell agreement during the listing period entitles the broker to the commission based on the subsequent sale of the property.  *See Hammond v. C.I.T. Fin. Corp.*, 203 F.2d 705, 709 (2d Cir. 1953) (the defendant's failure to refer the buyer to the broker breached the listing agreement and thus entitled the broker to a commission);

*Kislak Co. v. Geldzahler*, 509 A.2d 320, 326 (N.J. Super. Ct. Law Div. 1985) ("The appropriate measure of damages for breach of a term requiring referral of all inquiries to the listing broker, which is part and parcel of the exclusive agreement[,] is the stipulated commission in that agreement."); *E & E Mining, Inc. v. Flying D Grp., Inc.*, 718 P.2d 58, 62-63 (Wyo. 1986) (upholding the broker's recovery of the property sale's commission as damages for the seller's breach of the referral obligation in their listing agreement); *accord Van Schaack Land Co. v. Hub & Spoke Ranch Co.*, 244 F. Supp. 2d 1231, 1249 (D. Kan. 2003); *see also J.C. Nichols Co. v. Osborn*, 12 F. Supp. 2d 1196, 1201 (D. Kan. 1998) ("[E]very court that has considered the issue has ruled that . . . , where the seller has breached a referral provision and then sold the property without the broker, the seller's breach entitles the broker to the commission set out in the agreement.").

¶ 31 We agree with these conclusions and apply the rule to this case. When the seller's intentional concealment of the buyer, in clear violation of the referral provision of the listing agreement, precludes the broker from engaging with the buyer, the seller may not employ the procuring cause requirement to prevent the broker

13

from recovering the commission as damages on its breach of contract claim.

¶ 32 In this case, seller admitted at trial that he contacted and negotiated with the buyers' attorney during the term of the listing agreement, intentionally concealed his discussions from broker, and ultimately sold the property during the ninety-day holdover period set forth in the listing agreement. Seller's conduct was in direct violation of the referral provision.

¶ 33 Furthermore, broker did not contend that it was the procuring cause of the sale, nor did it assert that it was entitled to a commission it had earned through the sale of the property. Rather, it claimed seller breached the referral provision, and because of this breach, broker was prevented from procuring the sale.

¶ 34 Seller cannot use his intentional concealment of his negotiation with the buyers to prevent broker from obtaining damages in the form of a commission. A real estate broker is considered an expert in the negotiation and sale of real estate. *Doll v. Thornhill*, 6 So. 2d 793, 795 (La. Ct. App. 1942). We therefore "must presume that [the broker] could have accomplished [the sale]" or was at least "entitled to the opportunity to try." *Id.* Had

14

seller not intentionally concealed the potential buyer from broker, broker could have negotiated the sale and earned a commission under the procuring cause provision. Thus, the damages incurred as a result of seller's breach are appropriately measured as the commission broker was due under the listing agreement. *See, e.g.*, *Kislak Co.*, 509 A.2d at 326; *see also Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1194 (Colo. App. 2011) ("In a breach of contract action, a plaintiff generally may recover the amount of damages that is required to place him in the same position he would have occupied had the breach not occurred.").

¶ 35    Accordingly, the court did not err in rejecting seller's proposed procuring cause instruction.

## C.    Laches Instruction

¶ 36    The court rejected seller's proposed instruction on the affirmative defense of laches. The court ruled that, because of seller's improper conduct, seller did not "come[] before this court with sufficient clean hands to be able to assert" a laches defense. We agree with the court's conclusion.

¶ 37    Laches is an equitable defense that precludes a plaintiff from relief when the plaintiff has unconscionably delayed in enforcing its

15

rights, resulting in prejudice to the asserting party. *In re Marriage of Johnson*, 2016 CO 67, ¶ 16. However, "[a] party requesting equitable relief from the courts must do so with 'clean hands.'" *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 519 (Colo. App. 2006) (citation omitted). When the requesting party's improper conduct relates to the claim in some significant way, the improper conduct may bar that party's entitlement to an equitable remedy. *Salzman v. Bachrach*, 996 P.2d 1263, 1269 (Colo. 2000).

¶ 38    At trial, seller admitted that he had intentionally breached the referral provision and agreed that his purpose in concealing his negotiations was to deprive broker of its commission. Seller cannot now claim that broker unreasonably delayed bringing this action when seller intentionally concealed the facts giving rise to broker's claim.

¶ 39    Accordingly, the court did not abuse its discretion in rejecting seller's equitable defense. *See Premier Farm Credit*, 155 P.3d at 520 ("[I]t is within the trial court's discretion to determine . . . whether the facts support a finding of unclean hands . . . .").

¶ 40    To the extent seller now also asserts that the court erred in not giving jury instructions on waiver and estoppel, seller did not

16

request such instructions.  We decline to address issues not raised in the trial court.  *See JW Constr. Co.*, 253 P.3d at 1271.

## IV.  Impeachment of Broker's Agent

¶ 41  In a pretrial ruling, the court granted broker's motion in limine, which sought to exclude evidence of its agent's recent personal bankruptcy.  Seller does not directly challenge the in limine ruling.  Instead, based on events that developed during trial, he contends that the court erred in denying him the right to impeach broker's agent with this evidence at trial.  We disagree.

### A.  Standard of Review

¶ 42  The scope and limits of cross-examination, as well as the admission or exclusion of evidence, are within the sound discretion of the district court.  *Bonser v. Shainholtz*, 3 P.3d 422, 424 (Colo. 2000); *Radcliff Props. Ltd. P'ship, LLLP v. City of Sheridan*, 2012 COA 82, ¶ 31.  Absent a showing of an abuse of that discretion, we will uphold the district court's ruling.  *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1170 (Colo. 2002).  A court abuses its discretion when its decision misapplies the law or it is manifestly arbitrary, unreasonable, or unfair.  *Salazar v. Kubic*, 2015 COA 148, ¶ 6; *Radcliff Props.*, ¶ 31.

## B. Bankruptcy

¶ 43    During cross-examination, broker's agent testified that if broker was successful on its claim, the damages award was going to be split between him and the other agent who had worked on the listing. Seller argues that because the bankruptcy trustee in the agent's personal bankruptcy case was entitled to a portion of any amount awarded, the court erred in precluding his questions seeking to impeach the agent's credibility on that issue. But during trial the court made clear that it "[had] not preclude[d] the use of [the bankruptcy] for potential impeachment of the witness." Instead, the court precluded questioning because seller's attempt to impeach the agent with a bankruptcy document lacked sufficient foundation.

¶ 44    Accordingly, the trial court acted within its discretion in limiting seller's cross-examination.

## C. Additional Impeachment

¶ 45    Seller also asserts that the court erred by precluding cross-examination of broker's agent in several other areas. Because seller did not attempt to impeach broker's agent at trial on the

18

grounds seller raises before us, seller did not adequately raise or preserve this issue. *See JW Constr. Co.*, 253 P.3d at 1271.

## V. Statute of Frauds

¶ 46    Seller argues that the statute of frauds bars broker's claim because a signed listing agreement was not produced. We conclude seller waived this claim.

¶ 47    The assertion that a plaintiff's claim is barred by the statute of frauds is an affirmative defense. C.R.C.P. 8(c); *Univex Int'l, Inc. v. Orix Credit All., Inc.*, 902 P.2d 877, 879 (Colo. App. 1995), *aff'd*, 914 P.2d 1355 (Colo. 1996). Unless presented at trial, a defendant waives this affirmative defense. *See Landmark Towers Ass'n v. UMB Bank, N.A.*, 2016 COA 61, ¶ 24 (*cert. granted* Nov. 7, 2016). Merely asserting the defense in the answer to the complaint and the trial management order are insufficient to preserve the issue for appeal. *Id.* at ¶ 25.

¶ 48    Seller did not raise his statute of frauds defense at trial or tender an instruction to the jury. Nor did he present this argument in any dispositive motion. Accordingly, seller waived this defense.

## VI.  Property Transfer

¶ 49    To facilitate the sale of the property to the buyers, seller first transferred his property to a limited liability company (LLC) controlled solely by him.  The buyers then purchased a ninety-nine percent interest in the LLC and seller retained the remaining one percent.  Seller argues that, based on this transfer, no sale occurred that would entitle broker to a commission because seller retained an interest in the property.  *See Cooley Inv. Co. v. Jones*, 780 P.2d 29, 31 (Colo. App. 1989).  Because seller did not present this issue to the trial court, we again conclude that he has not preserved his argument for appeal.  *See JW Constr. Co.*, 253 P.3d at 1271.

## VII.  Appellate Attorney Fees and Costs

¶ 50    Broker requests an award of attorney fees and costs incurred on appeal.  The listing agreement entitles the prevailing party in any litigation relating to the agreement to "all reasonable costs and expenses, including attorney and legal fees."  Because broker has prevailed in this appeal, we award attorney fees and costs in its favor.  *See Suss Pontiac-GMC, Inc. v. Boddicker*, 208 P.3d 269, 272 (Colo. App. 2008).

¶ 51    We exercise our discretion under C.A.R. 39.1 to remand the case to the district court for determination of broker's reasonable attorney fees and costs.

## VIII.  Conclusion

¶ 52    The judgment is affirmed.  The case is remanded for further proceedings to award broker's costs and attorney fees incurred on appeal.

JUDGE WEBB and JUDGE NIETO concur.