24CA1372 Timnath Trail v Town of Timnath 06-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1372
Larimer County District Court No. 22CV30689
Honorable C. Michelle Brinegar, Judge

Timnath Trail LLC, a Wisconsin limited liability company,

Plaintiff-Appellant,

v.

Town of Timnath, a Municipal corporation of the state of Colorado,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Fox and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

Johnson Muffly & Dauster, PC, Ezekiel L. Rauscher, Fort Collins, Colorado, for Plaintiff-Appellant

Robinson Waters & O'Dorisio, P.C., Mike Lazar, Gianna C. Rossi, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Timnath Trail, LLC (Timnath Trail), a Wisconsin limited liability company, appeals the district court's grant of summary judgment in favor of defendant, Town of Timnath (the Town), a home rule municipal corporation within Larimer County. Timnath Trail contends that the district court erred by applying the three-year statute of limitations in section 13–80–101(1)(a), C.R.S. 2024, to its breach of contract claim, instead of applying the six-year statute of limitations in section 13–80–103.5, C.R.S. 2024. In the alternative, Timnath Trail contends that, if the three-year statute of limitations governs, there are genuine issues of material fact in dispute as to when its claim began to accrue and, thus, its claim is not time barred.

¶ 2     We partially agree with Timnath Trail. We conclude that the district court erred by applying the three-year statute of limitations to the portion of Timnath Trail's breach of contract claim concerning the development impact fees that it paid to the Town beginning in 2018, as the district court's interpretation of the contract does not give effect to the parties' intent. Because the development impact fees are determinable, we conclude that the district court should have applied the six-year limitations period.

As to the school fees, however, we agree with the district court that those fees were not determinable and, thus, the court properly applied the three-year statute of limitations. We also conclude that the court properly determined the date when the three-year limitations period began to accrue. Therefore, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I.    Background

¶ 3    In 2008, Arbor Holdings, LLC (Arbor), a Colorado limited liability company, Timnath Lands, LLC (Timnath Lands), a Colorado limited liability company, and the Town entered into an annexation agreement (the Agreement). Subject to the Agreement, Arbor and Timnath Lands owned real property (the Property) that they petitioned to be annexed into the Town. Arbor and Timnath Lands were referred to as the "Owners" in the Agreement. In May 2017, Timnath Trail became the successor in title and, thus, an Owner under the Agreement when it purchased the Property from Timnath Lands.[1]

---

[1] From our review of the record, it is not certain whether Arbor still holds title to the Property with Timnath Trail.

¶ 4     Under the Agreement, the parties intended for the Owners to develop the Property and for the Town to be able to control its growth to ensure a quality of life for its residents.  Under section 12.1(a) and (b), the parties acknowledged that the Owners were willing to make "substantial financial commitments and complete major public infrastructure improvements" in the early phases of the Property's development in exchange for the "Town's agreement to permit development of the Property in accordance with the terms and conditions of [the] Agreement."  As part of these financial commitments, Timnath Trail agreed that it would pay certain fees to the Town when it began development of the Property.

¶ 5     The parties' dispute centers on what the Agreement refers to as school fees and development impact fees.  Regarding school fees, section 6.9 of the Agreement states that the Owners "shall pay fees in lieu of dedicating land for a school site as required by any Intergovernmental Agreement between the Town and the Poudre R-1 School District as presently in effect and as may be amended *from time to time*."  (Emphasis added.)  Section 6.10 establishes limitations on dedications and fees, stating that, "[o]ther than as set forth in this Agreement, Owners shall not be required to dedicate

3

additional land for public school sites, nor pay any development impact fees or pay fees in lieu of dedication, nor reimburse the Town for any other cost unless previously approved by Owners in writing."

¶ 6    With respect to the development impact fees, section 7 of the Agreement states that "[t]he Town has established certain uniform development impact fees that directly address the effect of development intended to occur within the Property upon the Town's infrastructure, administration, and delivery of governmental services." That provision continues,

> The Owners agree to the payment of these uniform development impact fees as currently established by the Town, increased as hereinafter provided, until the year 2024, and after that time as the same are increased with Town-wide effect. The *development impact fees are to be paid at the current rate upon issuance of building permits*. The Town and the Owners agree that the necessity of such development impact fees is directly related to and generated by development intended to occur within the Property and that no taking thereby will occur requiring any compensation. *For Phase I and any commercial uses in Phase II of the Development, the Owners agree to pay, at time of building permit, commercial impact fees in an amount equal to $.09 times the number of square feet contained within each commercial building constructed within Phase I or Phase II*

4

> *of the Property, which may be increased periodically by the Town at a rate of three percent (3%) per annum, compounded annually. For Phase II of the Development, if residential, the fee shall be $4,913 per single family residence, plus $2,000 additional per single family residence for Old Town Improvements, with a corresponding reduction for multi-family residences.* The Town acknowledges $33,000 contribution by the Owners for pre-annexation fees, which shall be credited against the development impact fees due for the first and each subsequent building permit requested by the Owners until the credit is exhausted.

(Emphasis added.) The parties' dispute revolves around the italicized language.

¶ 7 From June 2018 to September 2018, Timnath Trail requested eleven permits from the Town to build 176 multi-family residential units. The Town charged Timnath Trail a total of $1,463,792 in development impact fees and school fees — Timnath Trail paid $110,176 for school fees pursuant to section 6.9 and $1,353,616 in development impact fees as set forth in section 7. Timnath Trail made its final payment on October 2, 2018.

¶ 8 To arrive at the total amount the Town charged Timnath Trail in school fees and development impact fees, the Town relied on an "Impact and Special Fees" final report dated November 15, 2015

(2015 Report). The 2015 Report listed five categories that comprised the development impact fees identified in section 7, charged per residential unit: (1) Police ($659); (2) Parks, Open Space and Trails ($3,669); (3) Public Buildings ($800); (4) Stormwater ($560); and (5) Transportation ($2,000). These five categories totaled $7,691 in development impact fees per residential unit. Thus, the $1,353,616 that the Town charged Timnath Trail in development impact fees is calculated by taking $7,691 multiplied by the 176 residential units built.

¶ 9 As illustrative of how the Town identified these fees per permit, we refer to the permit dated July 13, 2018, in which Timnath Trail sought to build 24 residential units. The development impact fee breakdown was:

| | |
|---|---|
| Police (24 units): | $15,816 |
| Parks/Open Space/Trails (24 units): | $88,056 |
| Public/Municipal Building (24 units): | $19,200 |
| Stormwater (24 units): | $13,440 |
| Transportation (24 units): | $48,072 |
| | _____ |
| Total Development Impact Fee: | $184,584 |

6

If one multiplies $7,691 by 24 units, it equals $184,584.

¶ 10    Relating to the school fees, the same July 13, 2018 permit had a line item for "School payment-in-lieu multi-family" for 24 units totaling $15,024, which amounts to $626 per residential unit. Therefore, if one multiplies $626 by 176 residential units, the total amounts to $110,176 in school fees.

¶ 11    But Timnath Trail alleged that the Town breached the Agreement by overcharging the fees. Timnath Trail filed its lawsuit on October 18, 2022, asserting a single breach of contract claim. Specifically, it alleged that the application of the formula for calculating the development impact fee set forth in section 7 should not have yielded an amount of $7,691 per unit. Instead, Timnath trail argued, it should have been charged "$4,913 per single family residence, plus $2,000 additional per single family residence for Old Town Improvements, with a corresponding reduction for multi family residences." Timnath Trail acknowledged that the Agreement did not identify the "corresponding reduction for multi-family residences," but it argued that the Town did not take any reduction into account when it charged the development impact fees for the eleven permits.

¶ 12    Timnath Trail alleged that, even without the "corresponding reduction," at most, the Town could charge $6,913 per unit ($4,913 + $2,000) for a total of $1,216,688.  And it alleged that under section 6.9, the Town could not charge Timnath Trail any other fee unless otherwise approved in writing.  When it filed its lawsuit, Timnath Trail did not make any distinction between the development impact fees of $7,691 and the school fees.

¶ 13    Timnath Trail filed a motion for partial summary judgment concerning solely the school fees.  It argued that under section 6.9, the Agreement required the Owners to pay a school fee subject to any intergovernmental agreement in effect between the school district and the Town.  But since the Town conceded that it had no intergovernmental agreement in place with the school district in 2018 when Timnath Trail paid the school fees, Timnath Trail argued that the $110,176 that the Town charged it for those fees was improper.

¶ 14    The Town subsequently filed a cross-motion for summary judgment arguing that (1) the statute of limitations barred Timnath Trail's breach of contract claim; and (2) Timnath Trail's claim for relief was barred by the Agreement's limitation of liability provision

because the relief Timnath Trail sought was damages outside of the agreed upon fees and, therefore, not authorized.

¶ 15    The district court denied Timnath Trail's motion, finding that genuine issues of material fact existed as to the school fees. But the district court granted summary judgment in favor of the Town, concluding that the three-year statute of limitations for contract disputes in section 13–80–101(1)(a) governed, and that Timnath Trail's claim involving the development impact fees was barred because it was untimely filed. Timnath Trail then filed a motion for post-trial relief, seeking reconsideration of the court's ruling on the school fees. The court denied the motion, finding that, like the development impact fees, the school fees could be amended from time to time, so they were not determinable. As a result, the district court held that Timnath Trail's breach of contract claim regarding the school fees was also barred by the three-year statute of limitations.

## II.    Standard of Review and Applicable Law

¶ 16    We review de novo a district court's order granting summary judgment. *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 19.

¶ 17    Summary judgment is only appropriate where there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Sanchez v. Moosburger*, 187 P.3d 1185, 1187 (Colo. App. 2008).  The party moving for summary judgment bears the initial burden of showing the nonexistence of any genuine issue of material fact, "and all doubts as to the existence of such an issue must be resolved against the moving party."  *Stanczyk v. Poudre Sch. Dist. R-1*, 2020 COA 27M, ¶ 51 (quoting *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988)), *aff'd on other grounds*, 2021 CO 57.

¶ 18    The interpretation of when a claim accrues under a statute of limitations is an issue of law that we review de novo.  *Rider v. State Farm Mut. Auto. Ins. Co.*, 205 P.3d 519, 521 (Colo. App. 2009).  But whether the statute of limitations bars a particular claim because certain circumstances exist is generally a question of fact.  *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003).  A court may grant summary judgment if the plaintiff's claim is barred by the governing statute of limitations, but it "cannot grant summary judgment on this basis if there are disputed issues of fact about when the statute of limitations began running."  *Curry v. Zag Built*

*LLC*, 2018 COA 66, ¶ 23 (quoting *Colo. Pool Sys., Inc. v. Scottsdale Ins. Co.*, 2012 COA 178, ¶ 67).

¶ 19 To the extent our analysis requires statutory and contract interpretation, both are also questions of law that we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010) (statute); *Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 2019 CO 5, ¶ 11 (contract).

¶ 20 We must adopt a construction of the statute that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000). To ascertain the General Assembly's intent, we look at the plain words of the statute or instrument and give words and phrases their ordinary meanings. *See Fischbach v. Holzberlein*, 215 P.3d 407, 409 (Colo. App. 2009). We construe the statute as a whole to give effect to all provisions. *See Mook v. Bd. of Cnty. Comm'rs*, 2020 CO 12, ¶ 24. If the statute is unambiguous, then we need not resort to other interpretative rules. *See Seaman v. Colo. Manufactured Hous. Licensing Bd.*, 832 P.2d 1041, 1042 (Colo. App. 1991).

¶ 21    Similarly, we interpret a contract "to ascertain and give effect to the intentions of the party or parties who created the instrument." *Quarky, LLC v. Gabrick*, 2024 COA 76, ¶ 11. To ascertain the parties' intent, we look at the plain words of the instrument and give words and phrases their ordinary meanings. *Id.* We construe the contract as a whole to give effect to all provisions. *See Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 23. If the contract is unambiguous on its face, we interpret the contract as written. *See Antero Res. Corp. v. Airport Land Partners, Ltd.*, 2023 CO 13, ¶ 13.

## III.    Analysis

¶ 22    We first address the development impact fees, then the school fees, and finally the accrual date.

### A.    Development Impact Fees

¶ 23    Neither party disputes that the three-year statute of limitations in section 13–80–101(1)(a) is the default period to bring a breach of contract claim. *See* § 13–80–101(1)(a) (A three-year limitation period applies for "[a]ll contract actions, including personal contracts and actions under the 'Uniform Commercial Code.'"). But Colorado law has a limited exception: a six-year

12

statute of limitations period exists in section 13–80–103.5, which applies to "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action." § 13–80–103.5(1)(a). In other words, section 13–80–103.5 applies to disputes in which the amount is *either* (a) a liquidated debt *or* (b) an amount that is determinable.

¶ 24　That statute, however, does not define the terms "liquidated" or "determinable." But case law has done so. Generally, a debt is deemed liquidated or determinable if the amount due is capable of ascertainment by reference to an agreement or by simple computation. *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995). Such a debt is liquidated or determinable even if the formula or computation is based on "facts external to the agreement." *Neuromonitoring Assocs. v. Centura Health Corp.*, 2012 COA 136, ¶ 16; *see also Portercare Adventist Health Sys. v. Lego*, 2012 CO 58, ¶ 18 (holding that in the hospital services context, generally, "an amount owed under an agreement is a 'liquidated debt' for the purposes of section 13–80–103.5(1)(a) if it is ascertainable either by reference to the agreement, or by simple computation using extrinsic evidence"); *Voodoo Leatherworks LLC v.*

13

*Waste Connections US, Inc.*, 618 F. Supp. 3d 1126, 1134 (D. Colo. 2022) (same, regarding contract for waste collection and disposal). In other words, the amount of the debt must be "easily calculable" based on the parties' agreement. *See Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000).

¶ 25 The district court found that the six-year statute of limitations did not apply because the amount of development impact fees was neither liquidated nor determinable. Instead, the court determined that the rates under the Agreement were subject to change throughout the years and, thus, the "current rate" was "variable depending on when [Timnath Trail requested and the Town issued] the permits." Because the three-year statute of limitations applied, it concluded that Timnath Trail's contract claim began to accrue at the latest in August 2018, when it began to pay the fees for the permits. Therefore, because Timnath Trail filed the lawsuit four years later, its claim was time barred.

¶ 26 We conclude that the district court improperly interpreted section 7 of the Agreement. Neither party disputes that Timnath Trail must pay certain development impact fees, as discussed in the first sentence of section 7. But it is in analyzing the second and

14

third sentences of that section where the district court's analysis goes awry. The district court interpreted the Agreement to mean that the Town could increase the fees over time. This is partially true, but one must parse the language in the sentences and look at section 7 as a whole.

¶ 27 The second sentence of section 7 is key: "The Owners agree to the payment of these uniform development impact fees as currently established by the Town, increased as hereinafter provided, until the year 2024, and after that time as the same are increased with Town-wide effect." The court interpreted this to mean that Timnath Trail must pay the development impact fees as "currently established," meaning when it applied for the permit. It supported its interpretation with the third sentence of section 7, which states: "The development impact fees are to be paid at the current rate upon issuance of building permits." In other words, the "current rate" for the development impact fee would be set at the time the permit was issued (i.e., 2018).

¶ 28 We agree with Timnath Trail that the district court's interpretation fails to give effect to (1) the formulas in section 7; (2) the Town's possible increase of the "current rate" for commercial

15

development with the "increased as hereinafter provided" language; and (3) the Town's increase of the "current rate" in 2024 to the Town's rates it charges to all developers.

¶ 29    First, the district court's interpretation does not give effect to the formulas in section 7.  The court interpreted the phrase "as currently established by the Town" as a reference to extrinsic information like the 2015 Report.  We conclude that this language refers instead to the formulas set forth in section 7.  Indeed, if the fees could be increased simply when the permits were requested, then the formulas in that section would be meaningless.

¶ 30    When looking at the entirety of section 7, the "current rate" for Timnath Trail's development impact fees was subject to one of two formulas based on whether it developed the Property for residential or commercial use.  Timnath Trail developed the property with residential units, so that formula states, "For Phase II of the Development, if residential, the fee shall be $4,913 per single family residence, plus $2,000 additional per single family residence for Old Town Improvements, with a corresponding reduction for multi-family residences."  Timnath Trail contends that $6,913 (with any

corresponding reduction for multi-family units) is the "current rate" referenced in section 7.  We agree.

¶ 31    Our interpretation is further bolstered by parsing the second sentence, which leads us to our second point: The court failed to give effect to any increase to the "current rate."  The second sentence's phrase "increased as hereinafter provided" does not mean increases to the "current rate" when the permits were requested and issued.

¶ 32    Instead, when interpreting contracts, we first look at the plain and ordinary meaning of the words used.  *Quarky, LLC*, ¶ 11.  The plain and ordinary meaning of "hereinafter" is "in the following part of this writing or document."  Merriam-Webster Dictionary, https://perma.cc/7BBF-942D.  Because we have already concluded that the "current rate" means one of the two formulas identified in section 7, "increased as hereinafter provided" refers to the commercial formula discussed in section 7, which contemplated the Town's ability to possibly increase those rates.

¶ 33    The commercial formula states: "For Phase I and any commercial uses in Phase II of the Development, the Owners agree to pay, at time of building permit, commercial impact fees in an

amount equal to $.09 times the number of square feet contained within each commercial building constructed within Phase I or Phase II of the Property." But that provision also indicates that the "current rate" "*may be increased periodically by the Town at a rate of three percent (3%) per annum,* compounded annually." (Emphasis added.) Our interpretation takes into consideration the Agreement's language that there could be increases to the "current rate" by reference to the commercial formula, as the Agreement "hereinafter" referenced.

¶ 34 This leads us to our third reason that the district court's interpretation is in error: It failed to give effect to section 7's reference to the year 2024. The final phrases of the second sentence state: "until the year 2024, and after that time as the same are increased with Town-wide effect." The Town argues that the formulas were examples, but that the rates in the 2015 Report control because the permits were issued in 2018.

¶ 35 But this begs the question: Why does the Agreement reference the year 2024? The only way to give effect to that reference is to interpret the second sentence as the parties "locking" in a rate for the development impact fees until 2024. With this interpretation of

18

the second sentence, the third sentence in section 7 — "The development impact fees are to be paid at the *current rate* upon issuance of building permits" — means that the Town could charge the rates from one of the two formulas as the "current rate" until 2024, or if Timnath Trail requested permits after 2024, the "current rate" would then be based on the rates charged with "Town-wide effect." Thus, it was not until 2024 when the Town could charge Timnath Trail the development impact fee that it would charge to any other developer (i.e. the $7,691 amount from the 2015 Report or some other amount if another report was in effect).

¶ 36     Our interpretation of section 7 is further bolstered by section 13 of the Agreement, which requires Timnath Trail to comply with the Town's ordinances and other laws. That provision states, "The parties do not intend that this Agreement, the vested property rights or the Site Plan to supercede Town ordinances, regulations, codes, policies and procedures except as provided herein or necessary for implementation of the terms of this Agreement." Because the Town's "ordinances, regulations, codes" and other laws are not intended to be "supecede[d]" by the Agreement, Timnath Trail would be required to pay the development impact fees

19

regardless of section 7. But with section 13, Timnath Trail's compliance with the Town's laws is required "except as provided" within the Agreement, thus referring to section 7's formulas that modified the amount of the development impact fees until 2024.

¶ 37    And our interpretation makes sense because, if Timnath Trail was required to pay a development impact fee regardless, section 7 does not have any effect unless it is interpreted to "lock in" an agreed upon formula until a time certain. This is especially true considering that, with the Town's growth, the development impact fees increased over time.

¶ 38    But our interpretation does not resolve the question of whether section 7's formula for residential development is determinable. If our interpretation does not alter the court's ultimate conclusion that the formula is not determinable, then we could affirm its application of the three-year statute of limitations on other grounds. But based on our interpretation and Colorado case law, we conclude that section 7's residential formula is determinable.

¶ 39    The Agreement's residential development impact fees have two possible calculations: the $6,913 amount for single family dwellings

20

or a "corresponding reduction" for multi-family dwellings. If all units built by Timnath Trail were single-family units, then the amount the Town should have charged is easily calculable by multiplying the 176 units by $6,913. But that section also contemplates a possible calculation based on "*a corresponding reduction for multi-family residences.*" The Town claims that this makes the formula not determinable.

¶ 40    Not so. The record also includes the "Impact Fee Study" finalized on September 30, 2002 (2002 Report).[2] The 2002 Report identifies development impact fees in the same five categories as the 2015 Report, noting that the $4,913 amount identified in section 7 was the total impact fee for a single-family residential unit and the "corresponding reduction for multi-family residences" lowered the impact fee for such residences to $4,115. The Town concedes that the 2002 Report was in effect until the Town replaced it with the 2015 Report. Indeed, the Town argues that, because of the

---

[2] The company that conducted and wrote the 2002 Report and 2015 Report wrote a letter as part of the parties' summary judgment briefing explaining that the development of lands was of statewide concern to the General Assembly, as outlined in section 29–1–801, C.R.S. 2024, and that local governments were required to charge development impact fees under section 29–20–104.5, C.R.S. 2024.

increased development, the Town repealed the "corresponding reduction for multi-family residents" in the 2015 Report. But the Town's point further supports our interpretation that section 7's formulas acted as a "locked in" fee until 2024.

¶ 41     Thus, the Agreement is not like the contract at issue in *Voodoo Leatherworks*, 618 F. Supp. 3d at 1130, where a federal district court held that any increased amount owed under the agreement based on the Consumer Price Index was not determinable because the contract language "did not disclose the . . . metrics [the company was] purportedly relying on to make increases." Instead, this case is more akin to *Fishburn v. City of Colorado Springs*, 919 P.2d 847 (Colo. App. 1995), where a division of this court held that the amount due to the city employees was easily calculable by taking the number of hours they worked in stand-by hours and multiplying it by twenty-five percent of their hourly base pay. *Id.* at 848, 850; *see also Rotenberg*, 899 P.2d 368 (holding that the amount owed to an attorney for unpaid fees was easily calculated based on the agreed upon hourly rate specified in the retainer agreement and the number of hours worked); *see also Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1086 (D. Colo. 2016)

(holding that wage claims were based on a set hourly rate, leading to easily calculable amounts due); *Comfort Homes, Inc. v. Peterson*, 549 P.2d 1087, 1090 (Colo. App. 1976) (holding that a construction contract that specified payment as a percentage of estimated costs allowed for simple computation of the amounts owed).

¶ 42    Consequently, the development impact fees in the Agreement are determinable for residential units until 2024 as follows: (1) for single-family units, the development impact fee is $4,913 plus $2,000 for any additional residential unit for "Old Town Improvements" for a total of $6,913; or (2) for multi-family units, the development impact fee is $4,115 plus $2,000 for any additional multi-family residential unit for "Old Town Improvements" for a total of $6,115.[3]

¶ 43    The Town contends that it would be error to rely on the 2002 Report. But the parties may rely on the 2002 Report as a reference to ascertain the easily calculated sum under the Agreement, just as

---

[3] It is not clear from the record if all 176 residential dwellings were single-family residences. Regardless, this appeal only requires us to determine which statute of limitations applies. Consequently, we have no opinion on the merits of Timnath Trail's lawsuit or what other remedies, if any, are available to it under the Agreement.

the Town wants to rely on the 2015 Report, which is also extrinsic to the Agreement. And while the 2002 Report was not generally in effect for developers once it was replaced with the 2015 Report, the Agreement locked in the 2002 Report's development impact fee amounts based on section 7. Because the development impact fees are easily calculable by reference to the number of single- or multi-family residential units by using $6,913 or $6,115, respectively, we conclude the district court erred by applying the three-year limitations period in section 13–80–101(1)(a) to Timnath Trail's breach of contract claim as it pertains to those fees. *Portercare Adventist Health Sys.*, ¶ 18 (an amount is determinable if it is easily calculable by reference to extrinsic evidence). Accordingly, we reverse in part the court's grant of summary judgment in favor of the Town, and we remand this portion of the case for further proceedings, as Timnath Trail filed its lawsuit within the six-year statute of limitations under section 13–80–103.5.

## B.    School Fees

¶ 44    We reach a different conclusion concerning Timnath Trail's challenge of the school fees the Town imposed. We agree with the district court's conclusion that the school fees were not

24

determinable and, therefore, subject to the three-year limitations period in section 13–80–101(1)(a).

¶ 45    Timnath Trail contended that section 6.9 only required it to pay fees if there was an intergovernmental agreement with the local school district and that, because no such agreement existed in 2018, it was improperly charged those fees.  The Town argued that Timnath Trail assented to the fees, as the predecessor in title knew about them, and that section 13's provision requiring such fees be charged subject to the Town's ordinance governed.

¶ 46    Section 6.9's language is markedly different than section 7's. There, the Agreement expressly indicates that the amount for the school fees are to be those reflected in any intergovernmental agreement "as presently in effect and as may be amended *from time to time.*"  (Emphasis added.)  Regardless of whether the Town had a contract with the school district in 2018, the amount of the school fees was not determinable, as they could have changed (or not been in effect at all).  Given that, we conclude that the three-year statute of limitations applies to this portion of Timnath Trail's breach of contract claim.  Thus, we now turn to whether the district court

properly determined when the three-year statute of limitations began to run.

### C.     Date of Accrual for the Three-Year Statute of Limitations

¶ 47     Timnath Trail contends that the court improperly granted summary judgment because there are disputed issues of fact as to when the three-year statute of limitations began to accrue.

¶ 48     For contract claims, a cause of action accrues on the date the breach "is discovered" or on the date the breach "should have been discovered by the exercise of reasonable diligence." § 13–80–108(6), C.R.S. 2024; *see City & Cnty. of Denver v. Bd. of Cnty. Comm'rs*, 2024 CO 5, ¶ 6.  The cause of action is discovered when the party obtains knowledge of the facts essential to the claim, not knowledge of the legal theory supporting it.  *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 10.  Such knowledge includes information that would lead a reasonable person to inquire further.  *Id.*

¶ 49     The district court determined that the three-year statute of limitations accrued, at the latest, in August 2018 when Timnath Trail began to pay the fees under the permits, as that is when it could have begun to discover, through reasonable diligence, that it might not owe school fees to the Town.

¶ 50   But Timnath Trail contends that the statute of limitations did not begin to run until it had notice of the potential breach in July 2020 when the parties began to discuss in depth the possible fee overcharges.

¶ 51   While the parties did not begin to discuss the potential overcharges until July 2020, this does not mean that Timnath Trail lacked the ability before then to discover the possible overcharges on the school fees.  As noted above, the eleven permits included a line item for the school fee.  Section 6.9 expressly states that such a fee is subject to an intergovernmental agreement.  Nothing prevented Timnath Trail from asking the Town for a copy of the intergovernmental agreement, and if none existed between the school and the Town, Timnath Trail could have explored its option to bring a lawsuit to challenge those charges.

¶ 52   And the record supports that Timnath Trail was indeed on notice about possible issues with the fees well before August 2018. For instance, a March 9, 2017 email between the Town and Timnath Trail's predecessor in title explained the school fees, stating that such fee "is assessed at the following rate per unit . . .

$626.00/du.[4] This rate is an estimate determined by taking the school district's acre cost for ground of $97,826 multiplied by the 0.64 acres (dedication)/100 units from the land use code."  The Town representative apologized for the oversight of not detailing this fee previously, but "wanted to get th[e] [fee estimate] to [Timnath Trail] *before* [Timnath Trail] *actually submit[ed] for a permit and are surprised to see this assessment.*  It isn't in our typical fee schedule as it is mainly with payment in lieu of dedications and not actually an impact fee."  (Emphasis added.)

¶ 53    Likewise, Timnath Trail's predecessor in title sent an April 28, 2017 email to the Town stating, "[W]e need some help from the town with reduced fees before we can get our project out of the ground."  The record also includes a July 2, 2020 email demonstrating Timnath Trail — now in possession of title as of May 2017 — continued to dispute with the Town the amount of the fees charged.  Granted, some of these emails deal with the development impact fees and do not reference the school fees.  But Timnath Trail was obviously looking at the fees it would be charged on the permits or

---

[4] We could not find in the record what "du" stands for, but it does not appear material to resolution of this issue.

actually charged, presumably could have obtained documentation about the fees before or after it acquired title, could have obtained such information from the Town, and continued to dispute those fees throughout the development process, but it did not file its lawsuit until October 2022.

¶ 54 Accordingly, we conclude that the district court properly entered summary judgment in favor of the Town and denied Timnath's Trail partial motion for summary judgment on the school fees because the breach of contract claim as to those fees is time barred.

## IV. Conclusion

¶ 55 The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE FOX and JUDGE GROVE concur.